Graham, Judge,
delivered the opinion of the court:
This is a suit for damages for alleged breach of contract in the sale by the War Department on behalf of defendant of certain shells. Plaintiff claims that it did not get what it purchased and thereby suffered a loss.
The Government on September 23, 1922, sent to plaintiff and others a circular proposal covering the sale of certain surplus materials and supplies in the form of shells and shell forgings located at the Toledo Ordnance Depot. The material was separated into three lots and numbered 1, 2, and 3, each lot being separately and briefly and generally-described in the proposal. The plaintiff, after inspection, bid on lot No. 2, and its bid was accepted. It paid in full for the material and received and accepted lot No. 2, on which it bid, i. e., 555,807 shells in 185,000 boxes. There were three shells to a box.
It was evident that the representatives of the Government making the sale did not know accurately what was in these boxes except that they contained shells. With the material stored in 185,000 boxes it would not be expected that it would take the risk of selling without reservation as to the contents of each box. Defendant’s representative before the sale, as was customary at these sales, took certain shells at random from a dozen or more boxes, broke them up, and displayed the pieces on a table in the office of the officer making the sale for the information of bidders. They were not displayed as samples.
Before bidding, plaintiff’s representative examined a shell and made a partial inspection of the material so far as it was possible, stored as it was in boxes. After its bid had been accepted and it had paid the whole amount of the bid it gave directions to deliver the material to its agent, who *380 received it and broke up the shells, and began shipping them to third parties, as directed by plaintiff. After 65 per cent of the shells had been unboxed and broken up and 6 carloads had been shipped from the premises to a third party, plaintiff claimed that some of the shells were steel, not malleable iron shells, and did not contain the amount of white metal stated in the proposal. On December 13, plaintiff complained of this situation to the officer conducting the sale, and made some suggestion's about rescinding the sale and leaving the material on the premises. The officer refused to consider a rescission of the sale, and pointed out the fact that the material accepted by plaintiff had been changed in form by stripping it and shipping part thereof. Plaintiff on January 5, 1923, sold and removed the steel shells and the remainder of the material, except the boxing in which the shells were encased.
The Government acted in good faith, and there is no charge or proof of bad faith. It was not its purpose to mislead prospective purchasers, and the material was described and sold for what the Government really believed it to be. The plaintiff knew that the Government was not engaged in the business of manufacturing this material of of buying and selling it. The material was stored in the form in which it had been shipped to the Toledo Ordnance Depot, and as it was carried on the records of the office of that depot. Plaintiff examined the material as it was stored, and it must have been evident that it was in the condition in which it had been received.
The plaintiff’s contention, as stated in its petition,' is as follows:
“ 6. That the United States breached its said contract with the plaintiff herein in that the shells delivered to the plaintiff herein were not all /Stokes trench mortar shells, 3" MK III, and were not all of malleable iron, and did not contain head-hole plug and bushing of white metal, weighing together about one-third (%) pound; in that approximately twenty-five per centum (25 %) of all the shells delivered were not of the same kind as the one shown to the plaintiff herein at or about the time and place of purchase; in that the shells delivered were not in accordance with the statements, warranties and representations made by the *381 United States as appears from said proposal and contract; and in that the United States failed to deliver to the plaintiff the wooden casings included in the purchase of the material referred to.”
The plaintiff’s contention is that this was a sale by sample. A perusal of the proposal, and the condition and form of the material, the lack of accurate knowledge upon the part of the Government as to what was contained in the 185,000 boxes — in fact, all the circumstances of the sale plainly indicate that it was not intended to be a sale by sample, and the facts found show that it was not. It is not readily apparent how the defendant could have described the material and the conditions and circumstances of the sale more accurately than it did in the proposal. The proposal gave the plaintiff as full and fair warning as any reasonable person could ask for of how the defendant was selling this material*
The proposal stated that the number of shells was 551,807. Before the bid was accepted 2,000 of these shells were withdrawn with plaintiff’s knowledge. The plaintiff received the balance. It also stated that the amount of material in lot No. 2 was as follows:
“Malleable iron, about 1,666 gross tons; steel, about 300 gross tons; white metal, about 191,750 lbs.
“ The weight of the lot is approximately 2,055 gross tons.”
It stated that the shells were packed in “ wood containers, * * * three shells to the box.” At the end of this description is the following language: “ For lot No. 2, ‘ As is, where is,’-dollars per gross ton.” The plaintiff’s bid was by the ton; that is, $16.77 “ per gross ton.”
This description alone would have been sufficient to put plaintiff on notice that there was no guaranty as to the character or the amount of the material. It was visited with knowledge of the meaning of the expression “ as is, where is.” It means that the seller sells without guaranty as to the amount or condition of the material; that he sells what may be found in the lot; that he does not profess to know accurately himself the amount or character of the material, and that the purchaser must take his chances on *382 what he will get. Lipshitz & Cohen v. United States, 269 U.S. 90, decided November 16, 1925.
This would seem to have been sufficient notice to have relieved the Government from any responsibility for discrepancies that might develop after delivery of the material ; but, as if to give the prospective purchasers the fullest warning of the conditions under which they purchased, the proposal contained the following statement:
“ The quantities, descriptions, conditions, weights, analysis, etc., of the supplies herein described are as accurate as circumstances permit, but are in no wise guaranteed by the Government, nor will any refund be made on account ox any of the- supplies not ooming up to expectations.”
Here was a further warning that plaintiff was buying at its own risk; that it was bidding in the dark; that if it bid and paid for the material and the goods delivered to it did not come up to its expectations it would have no relief and could not claim or expect to have its money refunded.
This is sufficient to dispose of plaintiff’s case. If this conclusion needed strengthening, it could be found in the conduct of plaintiff in breaking up the greater part of the material and shipping a good part of it to third parties before making any complaint, and afterwards shipping the remainder.
As to the principles controlling see Lipshitz & Cohen v. United States, supra; Maguire v. United States, 59 C. Cls. 515; Hummel v. United States, 58 C. Cls. 489, 494.
There is one other feature of the case. The proposal stated that the boxes and material would become the property of the purchaser. It required plaintiff to remove all of the material, which included the boxing, within sixty days, and provided that for failure within that time to give shipping instructions or remove the material all the material not removed would be forfeited to the Government. In the acceptance of plaintiff’s bid it was stated that the depot was soon to be abandoned and plaintiff was urged to remove the material as soon as possible. Plaintiff failed to remove the boxing within sixty days or give ship *383 ping instructions, though often urged to do so, and thereafter the Government disposed of the boxing left upon the premises. Under these circumstances plaintiff is not entitled to a recovery for the value of the boxing material.
In the light of the foregoing conclusions it does not seem .necessary to go into the question of whether plaintiff has shown a contract sufficiently formal to comply with the requirements of section 3744 of the Revised Statutes. Erie. Coal & Coke Corporation v. United States, 266 U.S. 518, and Lipshitz & Cohen v. United States, supra.
The petition should be dismissed, and it is so ordered.
Hay, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.