Geaham:, Judge,
delivered the opinion of the court:
By an act of Congress the Secretary of War was authorized to dispose of at public auction, surplus property belonging to the Government. Pursuant to this authority certain *155 property held at an intermediate depot in Philadelphia was advertised for sale in a catalogue designated “ Surplus Property Sale, at Quartermaster Intermediate Depot, Phila., Pa.,” wherein there was listed and described a lot of McClellan saddles.
On December 15, 1922, at a public sale of these saddles the plaintiff bid upon and purchased 1,582 saddles at $4.60 each, and paid for the same, and there were delivered to him 1,576 saddles, leaving sis undelivered, the value of which was afterwards refunded on the basis of the purchase price.
The Government acted in good faith. There is no proof or suggestion to the contrary.
It was known that the Government was not in the business of manufacturing and selling saddles. It was simply selling surplus material which it had purchased and could not use. The Secretary of War had authority to sell only what the Government had. In this case he sold a “ lot ” of saddles, and plaintiff bid for and bought the lot subject to the terms and conditions of the sale. There was delivered to it and it received what it purchased. See Fred E. Hummel, trustee, v. United States, 58 C. Cls. 489, 494.
This was not a case of sale by sample. The catalogue containing the conditions of the contract stated where the goods were located, when they could be inspected, and that guides would be furnished to direct prospective purchasers to the location of the property for the purpose of inspection. It further provided:
“ Failure on the part of any purchaser to inspect any property will not be considered as ground for any claim for adjustment or rescission.”
The property listed in the catalogue, it was stated, was sold “ ‘as is ’ and ‘ where is,’ without warranty or guaranty as to quality, character, condition, size, weight, or kind, or that the same is in condition or fit to be used for the purpose for which it was originally intended, and no claims for any allowances upon any of the grounds aforesaid will be considered after the property is knocked down to a bidder by the auctioneer.”
This is not a claim for shortage in quantity. It is a claim based upon the difference between the quality, char *156 acter, or kind of material received and that advertised; that is, that the saddles were not “ unused ” but used saddles which had been reconditioned — the very situation which the statement just quoted from the Government’s catalogue was intended to meet. The plaintiff was thus notified before the sale that if it bid and purchased the lot of material it could not claim any allowance on account of deficiency in quality, character, or kind of material sold and delivered.
The plaintiff did not take advantage of its right to inspect, but bought the lot without inspecting it.
Under the terms of the catalogue it is difficult to perceive how the Government could have given purchasers more specific warning than it did, that they bought at their risk what material it had and was offering for sale; that if a purchaser wished to protect himself he could do so by inspection, full opportunities for which were offered, and that if he failed to inspect and received something other than what he thought he was buying he could have no redress and could not claim allowances by reason thereof. More than that, he was distinctly told that failure to inspect would not be considered as a ground for adjustment. If plaintiff neglected to embrace the opportunity offered it to inspect and purchased the property without doing so, with notice that it bought at its own risk, it created by its own negligence the situation from which it now seeks relief.
Under the conditions of the sale the Government was only obliged to act in good faith, and this it did. The material was sold for what the Government believed it to be. The plaintiff can not recover. See M. Samuels & Sons, Inc., v. United States, 61 C. Cls. 373, 380; Lipshitz & Cohen v. United States, 269 U. S. 90, 92; Mottram v. United States, 271 U. S. 15; Maguire & Co. v. United States, 273 U. S. 67.
The foregoing conclusion disposes of the plaintiff’s case, but there is another ground which precludes a recovery. The alleged contract relied upon does not comply with the provisions of section 3744 of the Revised Statutes. In the case of Erie Coal Corp. v. United States, 266 U. S. 518, 521, the court said:
“Moreover, sec. 3744, Revised Statutes, required the Secretary of War to cause every contract made by him, or by *157 officers under him appointed to make contracts, ‘to be reduced to writing, and signed by the contracting parties with their names at the end thereof.’ The act of July 11, 1919, authorizing the Secretary to sell surplus war supplies, is not inconsistent with that section and does not repeal or modify it. There is no reason why it should not apply to contracts made in pursuance of the later act. It must be held that, because of the failure to make and sign a written contract as required by sec. 8744, the United States was not bound.”
See also Srere Brothers & Co. v. United States, 60 C. Cls. 994, 999.
The petition should be dismissed, and it is so ordered.
Moss, Judge; Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.