Giiaham, Judge,
delivered the opinion of the court:
This suit grows out of a sale by the War Department of certain surplus materials, consisting of blankets and duck. The terms and conditions of the sale are set out in Finding III, which contains, among other things, the following:
“ Twenty per cent of the bid must be paid in cash or certified check at the time and place of sale; balance within ten days from date of sale in cash, certified check, or letter of credit, otherwise the Government reserves the right to forfeit the deposit as liquidated damages, and the bidder shall lose all right or interest in the property. * * * The letter of credit must be in the form approved * *
The plaintiff bid at the sale, his bid was accepted, and he thereupon paid to the defendant $2,500, approximating the 20 per cent provided for in the terms of sale. The balance *735 was to be paid within ten days, and if paid by letter of credit it was to be “ in the form approved.”
On February 20, 1922, a letter of credit in the amount due on the sale, $11,328.90, was sent to the defendant at its Philadelphia depot by W. H. Duval & Company, of New York City, agents for plaintiff. The letter of credit was returned to W. H. Duval & Company on February 21, 1922, with an explanation that it did not meet the required form, and inclosing a blank approved form for a new letter of credit. Under the terms of the sale the defendant was within its rights in declining to receive the letter of credit in a form not approved.
Thereafter, not receiving a reply or payment, the defendant wrote again to the W. H. Duval & Co., requesting a letter of credit in proper form. On March 4, 1922, the company replied that the letter of credit had been canceled, and that all further communications relative to the purchase should be addressed to the plaintiff. Thereupon, on March 4, the defendant again wrote to plaintiff, requesting a settlement of the balance due, to which request it received no reply. After waiting two weeks the defendant, through the Eastern Surplus Property Sales Board, at its meeting held on March 18, 1922, rescinded the sale and the plaintiff’s right and interest in the property, declared the $2,500 deposit forfeited to the Government as liquidated damages upon the ground that the plaintiff had not paid for the property in accordance with the terms of the contract of sale, and directed that the property be resold as the property of the Government. On the 29th of March, 1922, the plaintiff was notified of the rescission of the sal'e and the appropriation of the $2,500 deposited as liquidated damages, to which plaintiff made no reply. Nothing was done by plaintiff in the matter until September 21, 1922, as hereinafter stated.
The defendant on June 19, 1922, sold the blankets at a private sale, and transferred to the Department of Agriculture the duck which was the subject of the previous sale.
Three months later, on September 21, 1922, plaintiff tendered to defendant a certified check of Backrack Brothers, Inc., to whom it had apparently sold the blankets and duck. *736 This offer was refused by defendant, as it had already disposed of the property. Thereafter plaintiff appeared at a meeting of the Eastern Surplus Property Sales Board and stated in effect that the goods were not of the quality that had been sold to him, and that for this reason the matter had been dropped, as it was not to his interest to remove the blankets. This complaint, it will be seen, was not made until nearly four months after the goods had ben resold and after notice that the sale had been rescinded, to which notice no reply was ever made, and it must be assumed that plaintiff acquiesced in the action of the Government.
As to the complaint about the quality of the material, there is nothing in the case but this statement of the plaintiff. Even accepting it as a fact, it would not relieve the plaintiff from his obligation under the terms and conditions of the sale. The terms of sale were that the material was sold “ as is and where is, without warranty or guaranty as to quality, character, condition, size, weight or kind, * * * and no claims for any allowances upon any of the grounds aforesaid will be considered after the property was knocked down.” This form of contract has been heretofore passed upon by this court. See the Triad case, 63 C. Cls. 151.
The original tender by plaintiff of a certified check was rejected because it was not in proper form, and this was the right of the defendant, as the contract provided that the letter of credit “ must be in the form approved.” But a tender to be good must be maintained, and in this case the tender was withdrawn, and the defendant notified that the letter of credit had been canceled. The time fixed for the payment of the balance of the purchase money was ten days from February 9,1922. Failing to hear from plaintiff, after requesting payment of the balance, after the tender had been withdrawn, the defendant exercised its right to rescind the contract and terminate the right and interest of the plaintiff in the property, and appropriate the 20 per cent deposit.
It is contended that the defendant had no right to appropriate, or, as the plaintiff puts it, to forfeit the $2,500 as liquidated damages; that it was enforcing it as a penalty, *737 which the courts are not inclined to favor. The parties have a right to contract upon the basis of the sum deposited being liquidated damages, and if .it appears to have been the intention of the parties that it should be so treated, that intention will be carried out.
The courts at one time were disinclined to enforce contracts providing for liquidated damages, and leaned to the construction of such provisions as penalties. Subsequently this view was greatly modified, until now the courts have become strongly inclined to allow the parties to make their own contracts, and to carry out their intentions. The question now is always, What was the intention of the parties. See opinion of Justice, afterwards Chief Justice, White in Sun, Printing & Publishing Co. v. Moore, 183 U. S. 642, where the authorities on this point are fully reviewed; also United States v. Bethlehem Steel Co., 205 U. S. 105, 119; and Tayloe v. Sandiford, 7 Wheat. 13, 5 L. Ed. 384. See Lamport Manufacturing Co., C-1209, this day decided (ante, p. 579).
It would be difficult in a contract to declare the intention of the parties more clearly than in this contract. It provides that if the balance of the purchase money is not paid within the time specified, the Government shall have “ the right to forfeit the deposit as liquidated damages,” and showing that this meant the rescission and termination of the contract and plaintiff’s interest therein, it provides that the “ bidder shall lose all right on interest in the property.”
We hold that under this contract the deposit of $2,500 was made with the intention that it was to be treated as liquidated damages upon the failure of the plaintiff to comply with the terms of the contract.
It is to be observed in conclusion that the defendant dealt fairly with plaintiff in this whole matter. It did not insist upon the forfeiture of the deposit upon the failure of plaintiff to pay the balance in ten days as it had a right to do, but made three attempts to have the plaintiff comply with its contract, and only asserted its right to Rescind the contract and appropriate the deposit after more than a month had *738 passed, two weeks after its third request for settlement. It notified the plaintiff of the rescission promptly and received no reply, and two months later resold the goods as its own. See Lamport Manufacturing Supply Co. v. United States, C-1209, this day decided.
The defendant has interposed a counterclaim for $510, which under the facts should be allowed. Let the petition be dismissed and judgment be entered in favor of defendant in the sum of $510, with interest from September 10, 1923, to date of judgment.
GREEN, Judge; Moss, Judge; and Booth, Chief Justice, concur.