Littleton, Judge,
delivered the opinion of the court:
By authority of an act of Congress the War Department offered for sale certain surplus material at the Morgan Ordnance Beserve Depot, at South Amboy, N. J., among which was listed and described a lot of empty shells. The sale of these shells was made at public auction September 21, 1922, at which time plaintiff bid upon and purchased 46,212 shells of a total weight, of 3,415,238 pounds, such bid being upon the basis of $1.32% per hundredweight. A formal contract was entered into by the plaintiff and the United States consummating the sale and the full purchase price of $45,251.90 was paid. A refund of $209.19 was made to plaintiff because of shortage in the total weight delivered. *675 Plaintiff contends that although it purchased the shells with knowledge that the property was being sold by the defendant “ as is ” and “ where is ” without warranty or guaranty as to quality, character, condition, size, weight, or kind, there were misrepresentations by the defendant of material facts upon which plaintiff had a right to rely and that, therefore, the disclaimer of warranty by the defendant becomes void and of no effect and that the sale should be governed by the same rule as would prevail had there been no attempted disclaimer.
Plaintiff was in possession of the catalogue at least two weeks prior to the sale and was thoroughly familiar with the contents thereof. This catalogue showed that it was compiled by the auctioneer, Samuel T. Freeman & Co., and contained the statement of the auctioneer that the catalogue had been made and checked from Government records, that the descriptions, weights, counts, and measures were as accurate as could be obtained but that no guaranty would be made as to the correct description or full delivery of the specified weight, count, or measure on any lot. The Government terms of sale, set forth on page 8 of the catalogue, invited inspection and set forth that the property was to be sold “ as is ” and “ where is ” without warranty or guaranty of any kind and that failure on the part of any purchaser to inspect would not be considered as ground for any claim for adjustment or rescission. Plaintiff made no application to test or inspect any of the shells offered for sale or to examine the Government records referred to by the auctioneer in the catalogue, which records, the plaintiff states in its brief, were present at the place of sale.
We think the circumstances under which the catalogue, on which the plaintiff relies as a basis of its claim, was prepared required the plaintiff to make an inspection before it purchased the property in order for it to be entitled to maintain successfully the claim here made, and, having failed to do so, it can not, under the Government terms of sale set forth on page 8 of the catalogúg; anil the provisions of the contract of sale of October 11, 1922, hereinbefore set forth, recover from the defendant for a breach of an implied warranty. *676 The same principle which prevails between individuals should control in the construction and carrying out of contracts between the Government and individuals. United States v. Utah, Nevada & California Stage Co., 199 U. S. 414; Hollerbach v. United States, 233 U. S. 165. The misrepresentations which will vitiate a contract of sale must not only relate to a material matter constituting an inducement to the contract but it must relate to a matter respecting which the complaining party did' not possess at hand the means or knowledge, and it must be a representation on which he relied and by which he was actually misled to his injury. This court will not relieve a party from the consequences of his own inattention and carelessness. Where the means or knowledge are at hand and open to inspection, if the purchaser does not avail himself of these means and opportunities he will not be heard to say that he has been deceived by the vendor’s misrepresentations. There was here no concealment by the defendant or anyone representing it and, so far as appears, the plaintiff not only had the opportunity to inspect but was invited to do so. The plaintiff states that having had considerable experience dealing, with the Government as a purchaser of surplus war materials, it had found the dealings satisfactory; that its experience had been that by relying upon the best figures which the Government was able to offer, it got satisfactory information as to the character and quantity of the goods sold.
There was no concealment and plaintiff is not entitled to favorable consideration when he complains that he suffered or was misled by overconfidence in the statements in the catalogue. The doctrine of caveat emftor applies here. In Smith v. Richards, 13 Pet. 26, the court pointed out “ that the law does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indifference to the ordinary and accessible means of information.” In Barnard v. Kellogg, 10 Wall. 383, 388, the court stated-
“ No principle of the commoil lahas been better established, or more often affirmed, pothdn this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an oppor *677 tunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies.”
It appears that in compiling the catalogue in which the property in question was listed, Samuel T. Freeman & Co., the auctioneer, misinterpreted the Government records with reference to the weight of the base cover lead disc, complete with copper. Plaintiff’s claim is not predicated entirely upon this discrepancy. It does not appear that the defendant manufactured these shells or that it had any knowledge of the copper content other than that shown in the catalogue, with the exception of the discrepancy between the Government records and the statement in the catalogue, as shown in the letter of Major George F. Lemon to plaintiff on October 28, 1922, set forth in Finding VII, but in the catalogue these weights were stated to be approximate and prospective bidders were cautioned to examine and inspect and they were put upon notice that the property would be sold “ as is ” and “ where is ” without warranty or guaranty as to quantity, character, condition, size, weight, or kind, and these terms were carried, even with greater force, into the contract of sale executed by the plaintiff and the defendant on October 11, 1922. In Triad Corporation v. United States, 63 C. Cls. 151, the court, at page 156, said:
“ The plaintiff was thus notified before the sale that if it bid and purchased the lot of material it could not claim any allowance on account of deficiency in quality, character, or kind of material sold and delivered.
“ The plaintiff did not take advantage of its right to inspect, blit bought the lot without inspecting it.
“ Under the terms of the catalogue it is difficult to perceive how the Government could have given purchasers more specific warning than it did, that they bpught at their risk what material it had and was offering for sale; that if a purchaser wished to protect himself he could do so by inspection, full opportunities for which were offered, and that if he failed to inspect and received something other than what he thought he was buying he could have no redress and could not claim allowances by reason thereof. More than that, he was distinctly told that failure to inspect would not be considered as a ground for adjustment. If plaintiff neglected to embrace the opportunity offered it to inspect and purchased the property without doing so, with notice that it *678 bought at its own risk, it created, by its own negligence the situation from which it now seeks relief.”
In this case the shells in question were sold as one lot. The claim here made by plaintiff is inconsistent with the contract of October 22, 1922, which the parties chose to make for themselves. It introduces a new element into the contract which it seems clear the parties intended it should not contain. They contracted on the basis of caveat envptor, which they had a right to do, and by the terms of the contract the law placed upon the buyer the risk of the purchase and relieved the seller from liability as to the result of any analysis of the metal content of the shells. The shells were not sold as separate shells nor the metal content of the shells sold as such. The formal contract between the parties set forth the total number of shells and the total weight thereof at $1.32% per hundredweight. In Lipshitz & Cohen v. United States, 269 U. S. 90, the court quoted from the opinion of the lower court as follows:
“ Since the Government is not in the business of buying and selling and its agents are authorized only to offer for sale such material as has been condemned as obsolete or useless, taking the language of this offer and acceptance I am of opinion that the contract must be construed as one offering to sell an approximate quantity of such cast iron, brass [cast and forged steel, bronze, armor steel] or lead, and as one offering to sell all of the materials of these descriptions which were on hand at the various points named, the intention being not to make a sale by the pound or ton, but to make an entire sale of specific lots of obsolete material, whether more or less than the weight, and to include all thereof. * * * I am satisfied that they [plaintiffs] can not claim that this contract, worded as it was, has been broken because it turned out that there was less, even greatly less, of some of the materials described as on hand than the description would have led the purchaser to suppose. It is not made to appear that the United States failed or refused to deliver any of the material that was actually at the forts named at the time the contract was made.”
The court then stated:
" We approve this construction of the agreement. Applicable principles of law were announced by Mr. Justice Bradley, speaking for the court in Brawley v. United States, 96 U. S. 168, 171. The negotiations had reference to'specific *679 lots. The naming of quantities can not be regarded as in the nature of a warranty, but merely as an estimate of the probable amounts in reference to which good faith only could be required of the party making it.”
We are of the opinion for the reasons hereinbefore set forth that the plaintiff is not entitled to recover. However, in any event, plaintiff could not recover the amount claimed, for, as is shown in Finding VII, the combined weight of the base cover, including the lead disc, was 0.67 pound. The lead disc weighed 0.3437 pound, which would indicate the copper and base cover to be 0.3263 pound. In other respects the description given in the letter of Major George F. Lemon, October 28, 1922, coincides with the description given in the catalogue. The inclusion of the lead disc, weighing 0.3437 pound, in the weight of the base cover, computed upon the number of shells, makes a total weight of 15,883.06 pounds, so that it is clear that the plaintiff, if it could be said to have been misled, was misled only as to the inclusion of the weight of the lead disc, totaling 15,883.06 pounds, in the weight of the copper base cover. This at 13% cents a pound amounts to $2,144.21. Deducting from this the refund of $209.19 made by the defendant leaves $1,035.02, which would, in any event, be the full measure of recovery.
It appears further that the total weight delivered to plaintiff was 3,399,450 pounds. Plaintiff claims that it realized from the shells 113,193 pounds of copper, 16,371 pounds of lead, and 2,248,800 pounds of steel. This fails to account for 21,086 pounds of the total weight delivered. It is just as reasonable to assume that this difference was part copper as that it was lead or steel, and, since plaintiff received it, if it were entitled to recover at all, it must definitely prove the actual content of the total amount. Plaintiff in its letter of November 17,1922, appearing in Finding VII, set forth that upon that analysis each shell contained 2.67 pounds of copper, which would make a total of 131,075.44 pounds.
The court is of the opinion that the plaintiff is not entitled to recover. The petition must, therefore, be dismissed, and it is so ordered.
Williams, Judge; Green, Judge; GRAham, Judge; and Booth, Chief Justice, concur.