### PAXTON–MITCHELL COMPANY
v.
### UNITED STATES.
No. 109–58.

United States Court of Claims.
April 8, 1959.

Richard L. Shook, Washington, D. C., for plaintiff.

Norman Hyman, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

Plaintiff alleges in its petition that it purchased from defendant 407.71 gross tons of material that had been advertised as "steel, Scrap, Cast steel, * * *," whereas 49.7 percent of it was malleable iron. Malleable iron differs from steel only in its carbon content. Steel has a carbon content of not in excess of 1.7 percent. When the carbon content exceeds 1.7 percent, the material is called malleable iron. Malleable iron is cheaper than steel, and plaintiff sues for the difference between what it paid for the malleable iron and the market value thereof.

The case is before us on motions for summary judgment.

The material was sold on an "as is" and "where is" basis. The contract provided:

> 2. *Condition of property.*—All property listed herein is offered for sale "as is" and "where is," and without recourse against the Government. * * * The description

is based on the best available information, but the Government makes no guaranty, warranty, or representation, expressed or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or its fitness for any use or purpose, and no claim will be considered for allowance or adjustment or for rescission of the sale based upon failure of the property to correspond with the standard expected; this is not a sale by sample."

Note that the contract expressly says that defendant does not guarantee, warrant, or represent that the material is of the "kind" or "character" or "description" as advertised. It said it was scrap steel, but it does not warrant that it is; this is not guaranteed.

It is agreed by counsel that steel and malleable iron are not distinguishable by the naked eye. They can be differentiated only by microscopic examination or by chemical analysis. The findings of fact of the disposal officer, filed as an exhibit to defendant's motion, show that "random samples" were taken from the pile offered for sale and were tested by sparking and cutting. These tests showed that the material was steel. The rest of the pile looked like that tested, and so it was sold as scrap steel; but with the express understanding that the defendant did not guarantee nor warrant it to be as advertised.

The reason for selling it "as is" and "where is" and for defendant's refusal to guarantee or warrant it, has been explained many times. See the cases cited hereinafter.

Article 1 of the "General Sale Terms and Conditions" requires bidders to inspect the property. It reads:

"1. *Inspection.*—Bidders are invited and urged to inspect the property to be sold prior to submitting bids. Property will be available for inspection at the places and times specified in the Invitation. The Government will not be obliged to furnish any labor for such purpose. In no case will failure to inspect constitute grounds for a claim or for the withdrawal of a bid after opening."

A bidder fails to inspect at his peril. Had plaintiff made an inspection before making its bid, as it did afterwards, it could have discovered that much of the material was malleable iron. Visual inspection was ineffectual, but microscopic inspection was effectual, as was also chemical analysis. Plaintiff was required to make the sort of inspection that was effectual. It made none, not even a visual inspection. Its failure to do so leaves it no room to complain.

Closely analogous to the case at bar are S. Snyder Corp. v. United States, 68 Ct.Cl. 667; and M. Samuel & Sons v. United States, 61 Ct.Cl. 373. Surplus scrap shells were sold in all three cases. In Snyder the advertisement said they had a copper content of 3.34 pounds per shell; whereas they only had 2.62 pounds. The complaint in that case was a deficiency in copper content. Here, the complaint is over an excessive amount of carbon. In Samuel the shells were said to be malleable iron; whereas it turned out only 75 percent was malleable iron, and 25 percent steel—the reverse of the present situation. In both cases it was held plaintiff was not entitled to recover.

See also United States v. Hathaway, 9 Cir., 242 F.2d 897; United States v. Silverton, 1 Cir., 200 F.2d 824; and American Sanitary Rag Co. v. United States, Ct.Cl., 161 F.Supp. 414, decided May 7, 1958, and cases there cited.

Plaintiff's motion for summary judgment will be overruled. Defendant's motion for summary judgment will be granted, and plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, MARIS, Circuit Judge (Retired), sitting by designation, and LARAMORE and MADDEN, Judges, concur.