**BARSTOW TRUCK PARTS & EQUIP-
MENT COMPANY, INC.,**

v.

**The UNITED STATES.**

No. 469–81C.

United States Claims Court.

May 14, 1984.

---

Bernard R. Schulhof, Hollywood, Cal., for plaintiff.

Beacham O. Brooker, Jr., for defendant; J. Paul McGrath, Asst. Atty. Gen., and

---

**11.** The issue of damages need not be (and has   not been) reached.

Michael J. Malone, Findlay, Ohio, of counsel.

## OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

YANNELLO, Judge.

An Order was issued in this case and served on the parties on April 30, 1984, concerning the parties' Cross-motions for Summary Judgment. That Order addressed all pertinent facts in the case and all issues raised by the parties—not all of which are felt to be of general interest. This opinion has been prepared for circulation and publication, containing the material in the earlier Order which may have general application and with none of the provisions or rulings in the original Order in any way being altered by the issuance of this abbreviated opinion. The relevant portions of the earlier Order are as follows:

"This matter is before the court on plaintiff's motion and defendant's cross-motion for summary judgment. Plaintiff, a California corporation, submitted a sealed bid to purchase surplus property belonging to defendant. After defendant awarded a contract of sale, plaintiff refused to accept delivery. Plaintiff claimed that defendant had misdescribed the property in its Invitation For Bids, thereby relieving plaintiff of its obligation to take delivery. Defendant rejected plaintiff's claim of misdescription on July 30, 1981 and instituted default proceedings. Plaintiff petitioned this Court for relief from any obligation arising under its bid. Defendant has counterclaimed for liquidated damages under the contract of sale.

"For the reasons discussed herein, the cross-motions for summary judgment are granted in part and denied in part.

## I. FACTS

"The Defense Logistics Agency circulated an Invitation For Bids [IFB] announcing the sale of various items of surplus property. Item 29 of the IFB defendant describes the following property:

29. LEAD BATTERIES, SUBMARINE, SCRAP: Including elements with plastic, fibreglass spacers, other nonferrous attachments and Dirt. Drained. Outside-E010250A1–D5CG2B-Loose 400,000 POUND

Article AI: Military Munitions List Items applies.

\* \* \* \* \* \*

"With regard to the condition and location of the property, the general terms of the sale make the following statement: *Unless otherwise specified in the Invitation,* all property listed therein is offered for sale "as is" and "where is." The description of the property is based on the best information available to the sales office. However, *unless otherwise specifically provided in the Invitation,* the Government makes no warranty, express or implied as to quantity, kind, character, quality, weight, size or description of any of the property, or its fitness for any use or purpose (emphasis added).

"Here, however, the general terms of the sale include a further Guaranteed Description clause in which defendant warrants that property delivered or offered for delivery under a contract of sale resulting from the IFB will be as described. \* \* \* \* \*

\* \* \* \* \* \*

## II. DISCUSSION

\* \* \* \* \* \*

### A. *Misdescription*

"Plaintiff argues that defendant misdescribed the property offered for sale as Item 29, consisting of 'LEAD BATTERIES, SUBMARINE, SCRAP: Including elements, plastic, fibreglass spacers, other nonferrous attachments and Dirt.' Plaintiff contends that defendant breached the Guaranteed Description Clause in two respects: (1) by failing to provide usable whole batteries and (2) by failing to provide disassembled batteries, containing approximately 42 pounds of copper terminals per battery.

"Plaintiff asserts that defendant made available only a pile of crushed battery

casings, dirt, and debris which had been exposed to the weather. For purposes of these motions, defendant accedes to this characterization of the property. Indeed, defendant 'will readily admit, within reason, to any characterization plaintiff desires to place upon the condition of Item 29 as it was when stored at Bremerton, Washington.' Defendant's Cross-Motion for Summary Judgment at 13.

"Plaintiff also asserts that Item 29 did not include all of the copper terminals it 'expected'. Rather, plaintiff contends that two-thirds of the terminals were missing from Item 29. The purported absence of these terminals, in plaintiff's view, constitutes a misdescription of the property. Defendant, on the other hand, alleges in its affidavits that all of the copper terminals were included in the item at the time of sale.

"Defendant further responds that Item 29 was offered strictly on an 'as is, where is' basis with no warranty applicable. Defendant argues that the Guaranteed Description clause is inapposite to these circumstances by virtue of subparagraphs b(2)(a) through b(2)(g) of that clause, which exclude warranties of use, performance, characteristic, weight or fitness for any purpose. Defendant maintains that the 'as is, where is' clause, particularly when taken in conjunction with the word 'scrap' in the item description, put plaintiff on notice that it could not expect to receive material of serviceable quality.

"Plaintiff replies with a trade usage and prior course of dealing theory. Plaintiff claims that it has purchased property of similar description from defendant over the years and has always received a certain percentage of serviceable batteries or parts containing 42 pounds of copper per battery. Plaintiff believes that this prior course of dealing is sufficient basis for it to have expected to receive both this amount of copper and a certain number of usable batteries in Item 29.

"In resolving arguments of this nature, this court and its predecessor have repeatedly held that an 'as is, where is'

clause in a contract constitutes a valid disclaimer of warranty. *See, e.g., Aircraft Associates Co. v. United States,* 174 Ct.Cl. 886, 891–92, 357 F.2d 373, 375–76 (1966); *Rochester Iron and Metal Co. v. United States,* 168 Ct.Cl. 422, 427–28, 339 F.2d 640, 643–44 (1964); *Alloys and Chemicals Corp. v. United States,* 163 Ct.Cl. 229, 324 F.2d 509 (1963). The very nature of the clause notifies the prospective purchaser that he bears the risk of loss. *Rochester Iron and Metal Co.,* 168 Ct.Cl. at 427, 339 F.2d at 643.

"The reason for a strict *caveat emptor* approach in sales contracts for surplus goods lies in the nature of the property itself. In selling surplus material, the government attempts to dispose of 'a vast miscellany of used and unused property in an effort, so far as the circumstances be possible, to minimize its loss.' *Dadourian Export Corp. v. United States,* 291 F.2d 178, 182 (2d Cir.1961). The sales are conducted on a mass basis by persons who seldom possess expertise in the items being sold. *Id.* Therefore, the government uses 'as is, where is' clauses to enable it to freely dispose of surplus property while minimizing its exposure to loss in the process.

"Consequently, purchasers of surplus property are aware of the 'either, or' nature of the goods for which they bargain; which is to say that either the property may be of relatively little worth, or the buyer may receive a windfall profit. *Dadourian Export Corp.,* 291 F.2d at 182. Normally, the purchaser can in no way expect to profit as a matter of course and will be barred from recovery in all but the most extreme cases.

"The 'as is, where is' clause in the IFB would, as a rule, serve as such an obstacle to plaintiff's recovery. Here, however, the terms and conditions also include the Guaranteed Description clause, which sets this sale apart from the ordinary 'as is, where is' sale. The guarantee of description provides, in pertinent part:

*Notwithstanding any other provisions of this Invitation for Bids to the contrary,* and subject to the limitations and conditions set out in subparagraphs a and b below, all of which are of the essence, the Government guarantees to the original purchaser of the property that the property delivered or offered for delivery under any contract resulting from this Invitation for Bids will be as described in the Invitation for Bids.

a. That if a misdescription is determined to exist *prior to the removal* of the property from Government control, that the sole and exclusive remedy available to the purchaser will be refund of the purchase price of the property as to which such misdescription exists or such portion thereof as the Government may have received (emphasis added).

"Defendant makes much of subparagraph b of the Guaranteed Description clause, which provides a number of exclusions from the warranty. However, defendant's assertions notwithstanding, subparagraph b specifically provides that it applies only to those instances in which 'misdescription is determined to exist after removal of the property from Government control.'[1] Since plaintiff did not remove Item 29 from the Puget Sound Shipyard, subparagraph b does not apply to this case.

■ "The Court of Claims has determined that blanket guarantees of description, such as that contained in this IFB, vitiate an 'as is, where is' clause as a valid disclaimer of warranty.[2] *Harry Thuresson, Inc. v. United States,* 197 Ct.Cl. 88, 93, 453 F.2d 1278, 1280 (1972). This effect must be given to the guarantee of description where, as in this case, the specific language of the contract makes the guarantee effective notwithstanding any other conditions, including those which otherwise disclaim warranty. In fact, given the inclusion of the clause, it is perfectly reasonable to conclude that this was the effect that defendant intended it to have.

■ "Absent an operative 'as is, where is' clause, the central question becomes whether defendant misdescribed the property listed under Item 29. Plaintiff relies extensively upon a trade usage and prior course of dealing theory to support the proposition that property described as 'lead batteries, submarine, scrap' will necessarily include a certain amount of copper (e.g. in the terminals) and a certain number of useable batteries. In their arguments upon this assertion, both parties make much of the definition of the term 'scrap' as the prime indicator of the contents of the item. However, they have misdirected their efforts in this instance.

"The term 'scrap' as used in the IFB is clearly defined. The regulations governing the sale of surplus property by the Department of Defense specifically provide that scrap is 'personal property discarded for use which appears to have no value except for its basic material content.' DOD 4160.-21–M, Ch. III, B, 131 (July 19, 1979). Thus, it appears that the word 'scrap' is an unambiguous term for purposes of determining misdescription.

"In light of the lack of ambiguity in the descriptive term 'scrap', plaintiff cannot validly claim that the lack of useable batteries in Item 29 constitutes misdescription. This is the case regardless of trade custom and usage, as it is well-established that those factors may not contradict or vary unambiguous contract language. *Lomas and Nettleton Co. v. United States,* 1 Cl.Ct. 641, 644 (1982).

"Of far greater importance to this matter is the term 'lead batteries', the composition of which is a genuine issue of material fact upon which the question of misdescription will hinge. Indeed, while both parties contend that there should be a certain amount of copper in lead batteries, scrap or otherwise, there remains the question of how much, if any, copper was included in Item 29.

---

**1.** [Footnote 1 omitted]

**2.** By its terms the clause is operative only "[u]nless otherwise specified".

### B. *Failure to Inspect*

"Of consequence in this case is plaintiff's admitted failure to inspect Item 29 prior to submitting a bid. Defendant warned prospective bidders several times in the IFB against 'blind bidding'. Moreover, the terms and conditions of sale categorically state that bidders are 'invited, urged and cautioned' to inspect all property before submitting a bid. However, plaintiff chose to ignore these admonitions for reasons of its own expense and convenience.

"Where a purchaser is served explicit notice that property is offered 'as is', the doctrine of *caveat emptor* is intended to be applied to the fullest extent permitted by the contract provisions. *United States v. Silverton*, 200 F.2d 824, 827 (1st Cir. 1952). Under a long line of decisions in such cases, failure to inspect has barred later claims. *Varkell v. United States*, 167 Ct.Cl. 522, 524, 334 F.2d 653, 654 (1964) (and cases cited); *United States v. Silverton*, 200 F.2d at 824. If plaintiff neglects the opportunity to inspect and purchases the 'as is' property with notice that it does so at its own risk, it creates by its own negligence the very problem from which it seeks relief. *Triad Corp. v. United States*, 63 Ct.Cl. 151, 156 (1927). In these cases, the effect given to the inspection clause is inextricably intertwined with the 'as is' terms of the sale.

"The Court is not sympathetic to plaintiff's assertion that it could not inspect the property because to have done so would have imposed an undue burden of inconvenience and expense upon it. If plaintiff was unable to spare the personnel or the expense to send its own representative to the Puget Sound Shipyard, it could have obtained a local agent to provide it with a property inspection report.[3] However, plaintiff chose not to examine the goods but to make a blind bid.

"Plaintiff argues that its failure to inspect is of no consequence in light of what it sees as a vast discrepancy between the goods advertised and the goods it received. It relies on the proposition that when a purchaser receives material totally outside the description of the property, he is entitled to relief despite any failure to inspect. *Silverton*, 200 F.2d at 828.[4] However, no such discrepancy exists in this instance; this is simply not a case of plaintiff 'ordering apples and getting oranges.' Therefore, the court does not accept plaintiff's contention in this regard.

"Rather, plaintiff's rights are preserved by the Guaranteed Description clause, a provision not present in the previously cited cases. For example, in *Varkell v. United States, supra*, where the terms of the contract called for the 'as is' sale of surplus film, the majority imposed an inspection requirement upon the purchasers, in the absence of any provision overriding the 'as is' nature of the sale. The dissent, having found that such overriding provisions did exist, would have permitted recovery even in the absence of any inspection.

"In short, this is not an 'as is' sale, but is subject to an express guarantee as to description. The admonition to inspect does not create a duty which vitiates the government's expressly warranted description of the property. Consequently, despite plaintiff's failure to make a pre-bid inspection, it may continue to press its claim of misdescription.

### C. *Transfer of Goods By Defendant*

\* \* \* \* \* \*

### D. *Liquidated Damages*

\* \* \* \* \* \*

### III. CONCLUSION

"For the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED to the extent that it is found that (1) there is no misdescription insofar as the matters of scrap whole batteries are

---

3. The record, in fact, indicates that plaintiff did employ an agent to inspect the property, but only after the contract was awarded. Affidavit of James Rajacich at 2.

4. For example, if a purchaser bids on scrap textiles and receives a load of scrap metal, he will not be bound by the contract, regardless of his failure to inspect.

concerned; (2) defendant properly disposed of the property following plaintiff's failure to take delivery; and (3) the liquidated damages clause fixes an appropriate recovery in the event of inexcusable default. The plaintiff's Cross-motion for Summary Judgment is GRANTED to the extent that it is found that (1) the contract contains a warranty of description with respect to lead batteries (and their anticipated copper content) and (2) the plaintiff is not estopped from recovering by virtue of its failure to inspect prior to bidding. In all other respects, the Motions for Summary Judgment are DENIED.

"This case shall now proceed to trial with respect to the issue of whether there was present, with respect to the disassembled batteries comprising Item 29, an appropriate amount of copper and terminals as would be consistent with the description of the property contained in the IFB."

\*   \*   \*   \*   \*   \*

Following the issuance of the Order of April 30, 1984, a Pretrial Order was issued on May 2, 1984, scheduling the parties' exchange of information pursuant to Rule 16.

