## ERIE COAL & COKE CORPORATION *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 78. Argued October 15, 16, 1924.—Decided January 5, 1925.

1. Where by the terms and conditions set forth in the advertisement of a public sale of public property acceptance of a bid will not be final until execution of a contract between the bidder and the United States reserving to the Government the right to rescind the sale within a time specified, the Government may exercise the option by refusing to make such contract with the bidder to whom the property has been knocked down, and such refusal gives the bidder no cause of action against the United States. P. 520.
2. Rev. Stats., § 3744, requiring contracts to be reduced to writing and signed by the contracting parties with their names at the end thereof, applies to public sales of surplus supplies by the Secretary of War under the Act of July 11, 1919, 41 Stat. 105. P. 521.

58 Ct. Clms. 261, affirmed.

APPEAL from a judgment of the Court of Claims sustaining a demurrer and dismissing the petition.

*Mr. John S. Wise, Jr.,* with whom *Mr. Walter John King* was on the briefs, for appellant.

*Mr. Solicitor General Beck* and *Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, appeared for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The judgment appealed from sustained a demurrer to plaintiff's petition and dismissed the case.

An act of Congress, approved July 11, 1919, 41 Stat. 105, authorized the Secretary of War to sell any surplus supplies then owned by and in the possession of the Government for the use of the War Department " upon such terms as may be deemed best." The petition alleged the following facts: The Secretary of War advertised approximately 40,000 tons of nitrate of sodium for sale at public auction at Washington, April 13, 1922. The advertisement stated that bidders would be required to make deposit of ten per cent. of the price of the nitrate purchased; that acceptance of any bid would not be final until the execution of a contract and bond and upon the failure by purchaser within ten days after notice of the acceptance of his bid to execute a contract, the United States might withdraw such acceptance, make other disposition of the nitrate, and retain the deposit as liquidated damages; and that the purchaser would be required, upon acceptance of his bid and before delivery of any nitrate, to enter into a written contract, providing that the Government " at its election may rescind said sale at any time before August 1, 1922, in which event the purchaser shall immediately . . . deliver to the Government . . . sodium nitrate in equal quantity with that theretofore delivered by the Government to purchaser . . . and the Government shall return to purchaser all money theretofore received in payment for such nitrates, and relieve him from any obligation for further payments . . ." The auction was held, and plaintiff was the highest bidder on three lots, amounting in all to 29,520

tons.  The total of its bids was $711,500.[1]  It deposited
more than ten per cent. of that amount.  The three lots
were by the auctioneer knocked down and sold to plaintiff
for the amount of its bids and upon the terms and condi-
tions of the advertisement.  Plaintiff was ready to per-
form on its part, and demanded that the Secretary exe-
cute a contract of sale in accordance with the terms set
forth in the advertisement.  But the Secretary refused
on the ground that the prices offered were inadequate.
Plaintiff's deposits were returned to it without prejudice
to any of its claims against the United States.  The mar-
ket value of the nitrate was $1,919,870.  And, by the
petition, judgment was demanded for $1,208,370, the ex-
cess of market price over total of plaintiff's bids.

The terms and conditions of the sale as set forth in the
advertisement were binding alike upon the United States
and the bidders.  If, after the receipt of plaintiff's bids,
the contemplated contract had been executed, the United
States thereby would have been authorized immediately
to rescind the sale and bring the matter to an end by re-
turn of the deposit.  But the Secretary, unwilling to ac-
cept the bids, refused to execute a contract and returned
plaintiff's deposit.  The right under the proposed contract
to rescind was the equivalent of a reservation, in the pub-
lished terms and conditions of the auction sale, of the
right of vendor to reject any and all bids.  Exercise of
the option to terminate the contract of sale would have
had the same effect and accomplished the same result as
the rejection of the bids.  The Secretary was not bound
uselessly to execute the contract and then to rescind the
sale in order to give effect to his decision not to let plain-

---

[1] Lot 1.   13,920 tons @ $25.00 a ton......... $348,000
  Lot 2.    5,000 tons @  25.00 a ton.........  125,000
  Lot 3.   10,600 tons @  22.50 a ton.........  238,500

                                    $711,500 total bids

tiff have the nitrates at the prices offered. It follows that the refusal of the Secretary to make the contract of sale gave rise to no cause of action in favor of the plaintiff.

Moreover, § 3744, Revised Statutes, required the Secretary of War to cause every contract made by him, or by officers under him appointed to make contracts, " to be reduced to writing, and signed by the contracting parties with their names at the end thereof." The Act of July 11, 1919, authorizing the Secretary to sell surplus war supplies, is not inconsistent with that section and does not repeal or modify it. There is no reason why it should not apply to contracts made in pursuance of the later act. It must be held that, because of the failure to make and sign a written contract as required by § 3744, the United States was not bound. *Clark* v. *United States,* 95 U. S. 539, 541; *South Boston Iron Co.* v. *United States,* 118 U. S. 37, 42; *St. Louis Hay & Grain Co.* v. *United States,* 191 U. S. 159, 163. And see *Monroe* v. *United States,* 184 U. S. 524, 527; *United States* v. *New York & Porto Rico S. S. Co.,* 239 U. S. 88, 92; *Ackerlind* v. *United States,* 240 U. S. 531, 534.

*Judgment affirmed.*