## DALTON v. UNITED STATES.
## Civil No. 85.

District Court, E. D. New York.
April 25, 1941.

Abram Shlefstein, of Brooklyn, N. Y. (Levy, Kornblum & Katz and Joseph Katz, all of Brooklyn, N. Y., of counsel), for plaintiff.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Mario Pittoni, Asst. U. S. Atty., of Lynbrook, N. Y., of counsel), for defendant.

ABRUZZO, District Judge.

This action seeks to recover a loss allegedly sustained by the plaintiff by reason of a breach of contract on the part of the defendant. It is claimed that the defendant failed to deliver the quantity of merchandise sold by it at an auction sale held November 23, 1932. This action was brought pursuant to the Tucker Act, Title 28 U.S. Code Annotated, Section 41, subdivision 20.

On October 10, 1929, the government instituted a condemnation proceeding for the forfeiture of certain watches and parts in connection with an infraction of the United States Customs Laws. This proceeding was entitled "United States of America, Libellant, v. 10 Watches, etc.". It was commenced in the United States District Court for the Southern District of New York and resulted in a final decree in favor of the government on June 3, 1932, forfeiting the merchandise to the government and conferring upon the defendant the authority to sell and dispose of the same at public auction.

On November 23, 1932, the defendant (also referred to herein as the United States of America or the government), by its agent, the United States Marshal for the Southern District of New York, sold to the plaintiff the merchandise, which the plaintiff claims was purported to be the same merchandise indicated in the final decree of June 3, 1932, for the sum of $20,225. Delivery was made on November 25, 1932.

The plaintiff became interested in this merchandise in the summer of 1932 and examined the file entitled "United States of America, Libellant v. 10 Watches, etc.". In answer to an inquiry at the office of the United States Marshal for the Southern District of New York, the plaintiff was informed that all of the merchandise seized and forfeited in that proceeding had been inventoried by the United States Appraisers Department and would be sold at public auction. He procured a photostat of the itemized list of articles seized and the value of each.

This inventory had been examined and approved by the United States Appraisers Department on September 24, 1929, and was signed by three of the appraisers. The total foreign market value was given as $23,180.20, the duty as $13,942.34 and the United States value as $48,531.33 (Plaintiff's Exhibit No. 1).

In the early part of November, 1932, the plaintiff received a catalogue from the United States Marshal, Southern District of New York (Plaintiff's Exhibit No. 3). There were fifteen separate sales included in this catalogue, but the plaintiff was interested in sale No. 7, which he claims covered the merchandise included in the inventory of September 24, 1929 (Plaintiff's Exhibit No. 1). Plaintiff further asserts and claims that an answer to an inquiry of the United States Marshal for the Southern District of New York constituted a verbal promise that sale No. 7

covered all the merchandise listed in the aforesaid inventory.

A week after the delivery of the goods, upon checking same against the inventory of 1929, the plaintiff discovered a shortage of the merchandise purchased on November 23, 1932, of 2,431 watches and 4,275 watch parts.

His action and resulting damages are based on this alleged shortage. Plaintiff's Exhibit No. 1, which is a photostat of the inventory of 1929, itemizes the watches, parts and merchandise. Plaintiff's Exhibit No. 3, which is a copy of the catalogue from the Marshal, gives a grand total of this merchandise and describes the same as having been forfeited to the government for violation of the customs law.

The plaintiff contends that the auctioneer, prior to the sale, made an announcement that he was prepared to sell merchandise forfeited to the United States of America for violation of the customs laws. Plaintiff maintains that the language of the auctioneer was such that the plaintiff was led to believe that the merchandise to be sold was that forfeited to the United States in the case of "United States of America v. 10 Watches, etc." On June 3, 1932; and that in making his bid he had a right to rely upon Exhibits No. 1 and No. 3. It is his contention that the inventory of 1929 (Exhibit No. 1) induced him to bid as high as he did and that the auctioneer sold him the goods contained in this inventory. He claims that the government made an agreement with him when he offered his bid to deliver the merchandise listed in Exhibits No. 1 and No. 3.

Exhibit No. 3 does not contain the number of watches and parts to be sold at auction. The itemized articles are listed in Exhibit No. 1, photostat of the inventory of 1929.

The government resists the cause of action set up by the plaintiff and various defenses have been interposed.

The defendant, the United States of America, claims that the conditions of the sale were made public and were as follows: "the jewelery, watches, etc. will be opened for inspection on Tuesday, November 22, 1932, between 10 A.M. and 3 P.M., and on the day of the sale until noon, at Customs Seizure Room, Army Base, etc."; that "a deposit will be required by the auctioneer from bidders, and the full amount bid must be paid immediately after the conclusion of the sale when the goods are delivered", and that "all goods are sold 'as they are', and no allowance will be made." No reference was made during the auction sale of the case of "United States of America v. 10 Watches, etc.", nor to any libel or forfeiture proceeding.

A question of fact is therefore resolved for determination by this court.

The merchandise bought by the plaintiff was contained in three packing cases that were open for inspection the day previous to and the morning of the sale. After the plaintiff's bid was accepted and the merchandise delivered to him, the evidence discloses that he checked his purchase. Upon completion of this tally on December 5, 1932, plaintiff alleges that he discovered the shortage. On December 16, 1932, he dispatched a letter to the Marshal for the Southern District of New York, making a claim for this shortage. Admittedly, the communication reached the Marshal on December 17, 1932. Between December 5, 1932, and December 16, 1932, the plaintiff sold a goodly quantity of this merchandise, in spite of his acknowledged shortage.

It is obvious that when the Marshal received notification of the alleged shortage the government was not in a position to check the veracity of the plaintiff's claim. Furthermore, it is somewhat bewildering to account for the plaintiff's actions in selling any of this merchandise while claiming that the government had breached its contract with him. There is no evidence that the plaintiff offered the return of the goods en toto or demanded a refund of his money. It is also significant that this suit was instituted five and one-half years after the sale at auction. The action asserted by the plaintiff does not appear plausible.

From the proof, the Court finds that the conditions of the sale were as asserted by the government. The goods were sold "as they are" and "no allowance will be made". The Court finds this as a matter of fact in spite of the denial of the plaintiff that these were not the conditions of the sale.

In view of this finding, the plaintiff must be non-suited. The terms of the auction were clear and simple and do not give rise to a cause of action by the plaintiff. He is not entitled to any recovery.

The New York Personal Property Law, Consol.Laws, c. 41, Section 102, provides: "* * * 2. A sale by auction is com-

478

plete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. * * *"

■ Plaintiff had every opportunity to examine the merchandise both before and after the sale, and as indicated in Maguire & Co. v. United States, 273 U.S. 67, 47 S.Ct. 274, 71 L.Ed. 540, the notice of inspection for the day previous to and the morning of the sale put the purchaser on notice to see exactly what he was purchasing.

From Mottram v. United States, 271 U. S. 15, 46 S.Ct. 386, 70 L.Ed. 803, it is clear that the plaintiff was not entitled to any more goods than those in the three packing cases.

The announcement of the sale to the plaintiff stating that all goods were to be sold "as they are" is analogous to the language of the announcement of the sale in the matter of Lipshitz & Cohen v. United States, 269 U.S. 90, 46 S.Ct. 45, 70 L.Ed. 175, wherein the goods were sold "as is where is". In that case it was stated, 269 U.S. at pages 91 and 92, 46 S.Ct. at page 46:

"Supporting his judgment in favor of the United States the District Judge said: 'Since the government is not in the business of buying and selling, and its agents are authorized only to offer for sale such material as has been condemned as obsolete or useless, taking the language of this offer and acceptance, I am of opinion that the contract must be construed as one offering to sell an approximate quantity * * * and as one offering to sell all of the materials of these descriptions which were on hand at the various points named, the intention being not to make a sale by pound or ton, but to make an entire sale of specific lots * * * and to include all thereof. * * * I am satisfied that they * * * cannot claim that this contract, worded as it was, has been broken because it turned out that there was less, even greatly less, of some of the materials described as on hand than the description

would have led the purchaser to suppose. It is not made to appear that the United States failed or refused to deliver any of the material that was actually at the forts named at the time the contract was made'. * * *

"These shortages amounted to approximately one-half of the total weight stated in the original schedule, but there is nothing to indicate bad faith. They complained, but made no effort to repudiate or annul the contract. * * , *

"We approve this construction of the agreement. * * * The naming of quantities cannot be regarded as in the nature of a warranty, but merely as an estimate of the probable amounts in reference to which good faith only could be required of the party making it."

In Erie Coal, etc., Corp. v. United States, 266 U.S. 518, at page 520, 45 S.Ct. 181, 182, 69 L.Ed. 417, the Court said: "The terms and conditions of the sale as set forth in the advertisement were binding alike upon the United States and the bidders."

In W. E. Hedger Co., Inc. v. United States, 2 Cir., 52 F.2d 31, both parties to the transaction erroneously believed that a tug was equipped with a towing engine. It was so described in the catalogues and circulars, but it was sold "as is and where is". The petitioner in that matter could have inspected the tug before purchase but did not do so. After he took possession of the tug, the petitioner discovered that the tug was not equipped with a towing engine, but he did not attempt to rescind the sale, but took the tug and brought suit for damages. However, as he bought the tug *as it was,* the government was under no liability. Having accepted the tug, there could be no recovery because the petitioner received just what he bought, though not what he thought.

In the case at bar, the plaintiff received just what he bought.

Judgment for the defendant. Submit findings of fact and conclusions of law on notice.