## UNITED STATES v. WEISBROD.
### No. 10709.

United States Court of Appeals
Seventh Circuit.

March 17, 1953.

Otto Kerner, Jr., U. S. Atty., and Anthony Scariano, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Martin O. Weisbrod, Chicago, Ill., for appellant.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Appellant seeks the reversal of a judgment for $670.32 entered against him by the District Court on June 25, 1952. Suit was brought by the Government claiming that appellant breached his contract to purchase a quantity of sodium carbonate from the Office of Surplus Property, Department of Commerce, by refusing to pay $934.92, as per the terms of his bid contract for the merchandise. After notice to appellant, the Government resold the sodium carbonate for his account to the highest bidder for $246.60, which was $670.32 less than his bid contract price.

By stipulation of the parties the original complaint was amended to permit the Government to show the terms of sale, including certified copies of the bid made by appellant on April 14, 1945, and the acceptance by appellee on April 28, 1945. The acceptance was made known to appellant by Notice of Sale dated May 7, 1945.

Appellant moved to strike the complaint as amended, claiming the contract was not enforceable because it lacked mutuality of obligation. The District Court denied the motion and appellant elected to stand on his motion and not plead over. The court then entered judgment in favor of the Government for $670.32 and costs. This appeal followed.

The essential facts are undisputed. In 1945, the Office of Surplus Property of the Department of Commerce, invited bids for 37 items of chemicals, drugs, etc., located at the Denver Medical Depot, at Denver, Colorado. All bids were to be submitted

to the Regional Office at Denver, on forms furnished by the Government. The record shows a letter sent by the Office of Surplus Property to appellant reading in part as follows: "A description of the property concerning which you have made inquiry is set out on the reverse side hereof which constitutes the form on which bids must be submitted. * * * Bidders are urged to inspect property prior to submitting bids." * * *

"References in this form to the 'Treasury Department' and the 'Procurement Division' are changed to 'Commerce Department' except in the reference to Treasury Department Sales Conditions No. 1. In paragraph of Treasury Department Sales Conditions No. 1, the references to 'Secretary of The Treasury' and 'Treasury Department' are changed to 'Secretary of Commerce' and 'Commerce Department,' respectively."

During the period covered by this transaction the Department of Commerce had control of Surplus Property Sales. Attached to the letter is a form entitled: "Department of Commerce—Bid and Contract Form—Surplus Property Sales." On this form appears the following statements:

"The undersigned bidder will buy, subject to the terms and conditions stated below the following property offered for sale by the Treasury Department and which was listed in the Surplus Reporter, dated 3/31/45."

"Conditions—This bid includes the terms and conditions set out on the reverse side hereof and, except to the extent, qualified thereby, Treasury Department sales conditions No. 1, dated January 30, 1945, a copy of which has been received by the undersigned bidder."

This document No. 1 contained eight conditions applying to sales of Surplus Property. Among its provisions are the following:

"Subject to any qualification which may be made in writing in the solicitation of bids, all sales are subject to the following conditions: (1) All sales are on a cash basis and payment in full must be made promptly after award and prior to the removal of the property." (2) In part, "Property must be removed at the purchaser's expense within 10 days (or such other period as may at any time be specifically allowed in writing) after the date of mailing by the Government of the Notice of Sale, which will be the purchaser's authorization to obtain delivery of the property. * * *"

Part of condition 2 and conditions 3 to 7 inclusive, are not material here and appellant makes no complaint thereon.

Condition 8, in part, reads as follows:

"The Government reserves the right to reject any or all bids or parts thereof, and to waive technical defects therein. The Government also reserves the right to withdraw from sale any property prior to the removal thereof without incurring any liability except to refund to the purchaser any amount paid with respect to the said property."

On April 16, 1945, Martin O. Weisbrod, doing business as Armco Mercantile Company, submitted his bid for item 24 on the Government form, theretofore sent him, for 1764 units of sodium carbonate at 53 cents per unit, for a total price of $934.92. His bid was accepted on April 28, 1945.

A Notice of Sale, dated May 7, 1945, was sent by the Government to Armco Mercantile Company, 77 West Washington Street, Chicago, Illinois, showing a balance due before delivery of the property in the amount of $934.92; that the custodian of the property is the Surplus Property Officer at the Denver Medical Depot, at Denver, Colorado. It further states: "Your bid for the surplus property listed below has been accepted. Payment of the balance due, if any, indicated above, must be effected and the property removed within ___ day period specified in your bid. In order to take delivery of the property awarded, you are requested to follow the instructions in paragraph ___ on the reverse of this notice. After these instructions have been complied with you

may take custody of the property, location of which is shown above." On the reverse side of the Notice of Sale appears "instructions to purchaser" and the second instruction therein reads as follows: "The amount indicated on the opposite side of this form as the balance due the Government over and above the deposit accompanying your bid must be forwarded to *this office* before the agency having custody of the property will be authorized to release it to you. *It is important that the original copy of this form be returned to this office with your remittance* when payment in full is received; the original copy of the Notice of Sale indicating 'Payment Received' will be returned to you and will serve as your authority to contact the Government official listed for the purpose of securing the property."

After receiving notice of the acceptance of his bid by the Government, on the same form, he was also notified of the sale of the property to him. He has failed and refused to pay the amount he bid and to comply with the terms of his bid contract.

Appellant contends that "under condition 8 of the Sales Conditions, the Government was not bound to complete the sale of the merchandise, for it could arbitrarily cancel the sale at any time prior to actual delivery merely by withdrawing the merchandise and refunding any money already paid by the person who was 'awarded' the merchandise. The Government contends that the purchaser was bound to pay the amount of his bid just as soon as it made the 'award.'" When defendant made his bid he did so with knowledge of the wording and import of Sales Condition No. 8 of the Government's offer to sell. He admits he made his bid and that the Government accepted it.

The property involved was never withdrawn from sale. It remained surplus property from the time he made his first inquiry about it, and he was sent a form upon which he made his bid, up to and until the resale thereof for his account, after notice to him.

In his brief, appellant assumes factual situations that are not present in the case. He contends "that the buyer is not liable for failure to pay the money stated in his bid after he receives an 'award.' * * * When the Government 'awarded' a 'Notice of Sale' to the defendant the Government merely promised to complete the sale unless it became necessary to cancel the sale prior to actual physical delivery."

In Erie Coal & Coke Co. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417, it appeared that under the terms of an Act of Congress, approved July 11, 1919, 41 Stat. 105, the Secretary of War was authorized to sell supplies "Upon such terms as may be deemed best." The sale of about 40,000 tons of nitrate of sodium was authorized to be held at public auction. The advertisement of the sale stated that the acceptance of any bid would not be final until the execution of a contract and bond, and that upon the failure of a purchaser within ten days after his bid to execute a contract, the United States might withdraw its acceptance of such bid and make other disposition of the nitrate involved, retaining any amount deposited, as liquidated damages. The advertisement further provided that the purchaser would be required, upon acceptance of his bid and before delivery to enter into a written contract, providing that the Government "at its election may rescind said sale at any time before August 1, 1922, in which event the purchaser shall immediately * * * deliver to the government * * * sodium nitrate in equal quantity with that theretofore delivered by the government to purchaser * * * and the government shall return to purchaser all money theretofore received in payment for such nitrates, and relieve him from any obligation for further payments."

The advertised sale was held and plaintiff became the highest bidder for 29,500 tons of sodium nitrate, its bids totaling the sum of $711,500. It deposited 10% of that amount. Plaintiff was ready to perform on its part, and demanded that the Secretary execute a contract of sale in accordance with the terms set forth in the advertisement. The Secretary refused because he claimed that the prices offered were inadequate. Plaintiff's deposits were returned without prejudice to any of its claims

632

against the United States. The Supreme Court said 266 U.S. on pages 520–521, 45 S.Ct. on page 182:

"The terms and conditions of the sale as set forth in the advertisement were binding alike upon the United States and the bidders. If, after the receipt of plaintiff's bids, the contemplated contract had been executed, the United States thereby would have been authorized immediately to rescind the sale and bring the matter to an end by return of the deposit. But the Secretary, unwilling to accept the bids, refused to execute a contract and returned plaintiff's deposit. The right under the proposed contract to rescind was the equivalent of a reservation, in the published terms and conditions of the auction sale, of the right of vendor to reject any and all bids. Exercise of the option to terminate the contract of sale would have had the same effect and accomplished the same result as the rejection of the bids. The Secretary was not bound uselessly to execute the contract and then to rescind the sale in order to give effect to his decision not to let plaintiff have the nitrates at the prices offered. It follows that the refusal of the Secretary to make the contract of sale gave rise to no cause of action in favor of the plaintiff."

Cf. United States v. Barowsky, D. C., 91 F.Supp. 149; Schneiderman v. United States, 93 F.Supp. 626, 117 Ct.Cl. 715.

The Surplus Property Act of 1944, 58 Stats. 765 in section 2 discloses that objectives of the Act are, among other things therein enumerated to "regulate the orderly disposal of surplus property so as—(a) to assure the most effective use of such property for war purposes and the common defense; * * * (h) to assure the sale of surplus property in such quantities and on such terms as will discourage disposal of it to speculators or for speculative purposes."

Section 5 of the Act, 58 Stat. 768, provides for a Surplus Property Board. It states in section 6: "The activities of the Board shall be coordinated with the programs of the armed forces of the United States in the interests of the war effort. Until peace is concluded the needs of the armed forces are hereby declared and shall remain paramount. The Board shall have general supervision and direction, as provided in this Act, over (1) the care and handling and disposition of surplus property, and (2) the transfer of surplus property between Government agencies." The functions of the Surplus Property Board are now performed by the War Assets Administration.[1]

The case of North & Judd Mfg. Co. v. United States, 84 F.Supp. 649, 114 Ct.Cl. 355, affords an instance in which it became necessary for the Government, under the provisions of a condition similar to condition 8 in the case at bar, to cancel an award of contract for certain rolled stripped steel. In that case the plaintiff's bid had been accepted by the War Assets Administration and a part of the steel delivered to it. The army then discovered that there was an urgent need for rolled stripped steel required to make rifle clips. It cancelled the North & Judd Mfg. Company contract. Cf. Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417.

In our opinion these provisions of the Surplus Property Act make it plain that condition 8 was inserted in such offer and later on embodied in the contract which was forwarded to appellant in order to meet the foregoing requirements of the statute. Various conditions arising in the military situation might bring about many instances in which it would be necessary for the War Department to recall for military purposes property which had been declared surplus.

It should also be noted that condition 8, which is the principal cause of appellants' dissatisfaction, was contained in the offer

1. Executive order 9689 Jan. 31, 1946, 50 U.S.C.A.Appendix § 1614(a) note, 11 F.R.C. 1265 transferred the functions of the Surplus Property Administration to the War Assets Corporation.

for the sale of the property involved by the Office of Surplus Property.

In disposing of Surplus Property the Government is not engaged in normal trade. In disposing of property, it may attach such reasonable conditions as are necessary for the general welfare. If one does not wish to bid for Government Surplus Property with the conditions attached, his alternative is to make no bid.

We conclude that appellant's claim that the contract in question lacked mutuality of obligation is without merit.

The judgment of the District Court is Affirmed.