Vaughn A. JONES, C. M. McMullin, individually, and on behalf of others similarly situated, Plaintiffs,

v.

TENNESSEE VALLEY AUTHORITY, a corporation established by Federal Statute, et al., Defendants.

No. 71–5–Civ–Oc.

United States District Court, M. D. Florida, Ocala Division.

Dec. 7, 1971.

Robert J. Carroll, Muscarella, Perenich & Carroll, P. A., Clearwater, Fla., for plaintiffs.

Robert H. Marquis, Thomas A. Pedersen, Beauchamp E. Brogan, T. V. A., Knoxville, Tenn., for defendant Tenn. Valley Authority.

Harvey R. Klein, Ocala, Fla., for defendant Rainbow Springs Corp.

Richard P. Kenney, Lewis M. Kanner, Williams, Salomon & Kenney, Miami, Fla., for defendant Deltona Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHARLES R. SCOTT, District Judge.

This is an action in which plaintiffs seek to have themselves declared to be the highest bidders upon certain tracts of land sold by the Tennessee Valley Authority (TVA) at an auction sale in Hernando, Florida, on January 21, 1971. The cause came on to be tried before the Court without a jury on October 20, 21, 22 and 26, 1971. After completion of plaintiffs' presentation of their evidence, defendants, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, moved the Court for a dismissal of the action on the ground that upon the facts and the law plaintiffs had shown no right to relief. After hearing argument from counsel the Court granted defendants' motion and enters herein its findings of fact and conclusions of law as provided in Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. The land involved herein was owned by the United States of America and sold by the Tennessee Valley Authority (TVA), pursuant to Section 31 of the TVA Act which provides:

> That any land purchased by the Authority and not necessary to carry out plans and projects actually decided upon shall be sold by the Authority as agent of the United States, after due advertisement, at public auction to the highest bidder [16 U.S.C. § 831dd (1970)].

2. The public auction was advertised by the TVA by mailing a notice of sale, entitled "Auction Sale by TENNESSEE VALLEY AUTHORITY to be held January 21, 1971, VFW Hall, Hernando, Florida" to numerous people on a mailing list compiled by the TVA, and by publishing a notice of sale in newspapers throughout the State of Florida. The notice, as mailed and published, recites that information, regarding the sale, may be obtained from J. R. Perry, Chief, Land Branch, TVA, Chattanooga, Tennessee 37401, Telephone 1–615–755–2894 prior to or at the sale and also from TVA representatives in the area.

The printed notice of sale was made available to all interested parties at the sale, and prior to the sale, was made available to all parties seeking information regarding the sale.

3. Pursuant to such due advertisement, 46 tracts of land were offered for sale at public auction to the highest bidder on January 21, 1971, at Hernando, Florida.

4. The terms and conditions of the auction sale were stated in advance in

the written notice of the auction sale which in pertinent part provides as follows:

> In case of dispute the decision of the auctioneer will govern. TVA reserves the right to reject any and all bids.
>
> Each property will be offered separately. The auctioneer will identify each tract offered for sale by tract number, size, and general location and upon request will show a map of the property. When the auctioneer has concluded the offering of each tract separately and all bids on each separate tract have been received and recorded as to the name of the highest bidder and the amount of his bid, the auctioneer will request anyone present to offer to bid on combination of tracts. The bidding on combinations accepted by the auctioneer for bidding will proceed at the new minimum price established by the auctioneer as a result of the prior bidding and will proceed until all such bids have been made and recorded as stated above. Finally, the auctioneer will ask for a bid on all of the tracts of land. When the bidding is concluded the auctioneer will determine which bid or bids, in his sole opinion, is most advantageous to TVA and will thereupon adopt such bid or bids as the final bid and declare the bidder or bidders, as the case may be, to be the purchaser or purchasers of the land.
>
> All sales are final and after the auction there will be no opportunity to raise bids as permitted in court sales.

The notice of the auction sale also stated the minimum acceptable price for the 46 tracts which had different values.

5. The terms and conditions of the auction sale, including the aforementioned quoted portion, were read and explained by the auctioneer prior to the commencement of any bidding on the morning of the sale, including an explanation of combination bidding, to which there were no objections or protests from plaintiffs or any other potential bidders. Plaintiffs were given full opportunity to ask questions and otherwise participate equally in the auction sale. TVA reserved the right to reject any and all bids. The auctioneer explained that he reserved the right to determine which proposed combinations he would accept for bidding during the combination bidding period; that he would take the biggest combination he could get; that once a tract of land was accepted for bidding in a combination of tracts it could not then be included in another combination; that he would conduct the sale to dispose of the most land for the most money; and that he also reserved the right to determine, at the conclusion of the sale, which bid or bids, in his sole opinion, was most advantageous to TVA and to adopt such bid or bids as the final bid. Minutes of the sale were kept by a sales clerk who was a TVA employee.

6. During the period of individual tract bidding, only 24 of the 46 tracts offered for sale were bid upon. Such bids were mere offers to purchase which were not accepted by the auctioneer. Bidding on an individual tract basis was concluded at approximately 12:09 P.M., and the sale was adjourned for lunch until 12:54 P.M. During the noon recess, no questions were asked the auctioneer by any of the bidders, including plaintiffs, regarding combination bidding.

7. When the auction sale resumed after lunch, the period of combination bidding began with another explanation by the auctioneer of combination bidding, to which there were no objections or protests from plaintiffs or other potential bidders. When the auctioneer asked for proposed combinations he received 10 proposed offers for consideration. The first of these was the Deltona Corporation's 36-tract combination, and the eighth was Rainbow Springs Corporation's 7-tract combination. Deltona's proposed combination was for tracts 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59, 102, 103 and 104 for a price of $511,600.00, which included the new minimum prices

established by the prior bidding and the minimum prices quoted in the notice to bidders for those tracts not bid upon during the individual tract bidding. Rainbow's proposed combination was for tracts 12, 14, 15, 16, 17, 18 and 19 for a price of $197,500.00, which included the new minimum prices established by the prior bidding and the minimum prices quoted in the notice to bidders for those tracts not bid upon during the individual tract bidding.

8. The auctioneer properly received and evaluated all 10 proposed combinations, which were the only combinations proposed. Such proposed combinations were mere offers to bid, and the auctioneer, by the express terms of the sale, reserved the right to determine which proposed combinations he would accept for bidding.

9. After the 10 combinations had been proposed, received and evaluated by the auctioneer, he accepted for bidding the 7-tract combination proposed by Rainbow Springs Corporation and offered it to the public for bidding. The acceptance by the auctioneer of such combination was proper and there were no objections or protests to the acceptance of this combination for bidding. Rainbow Springs Corporation bid $197,500.00 for the 7 tracts. Plaintiffs made no bid on or against the 7-tract combination. After the auctioneer had offered the combination three times for a higher bid and received none, he sold the property to Rainbow Springs Corporation, subject to the final stage of the sale when the 46 tracts were offered as a unit.

10. After the bidding on the 7-tract combination had been concluded and the property sold to Rainbow Springs Corporation, the auctioneer allowed a 15-minute recess to give all bidders an opportunity to regroup and to consider whether they wanted to bid on the large grouping of tracts proposed by Deltona Corporation as a combination.

11. After the 15-minute recess, the auctioneer accepted for bidding the 36-tract combination proposed by Deltona Corporation and offered it to the public for bidding. The acceptance by the auctioneer of such combination was proper and in accordance with the terms and conditions of the sale. Deltona Corporation bid $511,600.00 for the 36 tracts. Plaintiffs made no bid. After the auctioneer had offered the combination three times for a higher price and received none, he sold the property to Deltona Corporation, subject to the final stage of the sale when the 46 tracts were offered as a unit.

12. There was no improper recognition of the Deltona Corporation by the auctioneer.

13. After the combination bidding had been concluded, and after the 7-tract combination and 36-tract combination had been sold to Rainbow Springs Corporation and Deltona Corporation, respectively, one of the members of plaintiffs' alleged class, identified as Mr. Kaufman, stated for the first and only time that he would like for the record to show that for tracts 12, 14, 15, 16, 24, 25, 26, 27, 28, 29, 41, 42, 43, 44, 45, 39, 40, 46, 47, 49, 50, 51, 52, 53, 54, 55, 56, 58, 59 and 60 his group would have been willing to bid $599,000.00. Four of these 30 tracts were included in the 7-tract combination sold to Rainbow Springs Corporation and 25 in the 36-tract combination sold to Deltona Corporation. The auctioneer properly refused to accept such combination because it was made "for the record only", it was not in fact a bid, it was made after combination bidding had been concluded, and the auctioneer had the right to reject such combination under the terms and conditions of the auction sale.

14. Tracts 7, 22 and 60, which were not sold in either of the two combinations, were offered for bidding. Tract 22 was sold, subject to the final stage of the sale when the 46 tracts were offered as a unit.

15. All 46 tracts were then offered as a unit for bidding in accordance with the terms of the sale, but no bid was re-

ceived. Rainbow Springs Corporation and Deltona Corporation were thereupon declared by the auctioneer to be the highest bidders for the property in question and he accordingly sold the property to them.

16. Plaintiffs were not the highest bidders for the property in question.

17. The property in question was sold to the highest bidders, namely, Rainbow Springs Corporation—7 tracts for $197,500.00, and Deltona Corporation—36 tracts for $511,600.00.

18. The auction sale was properly conducted and it was conducted in accordance with the terms and conditions thereof. Combination bidding was properly utilized in accordance with the terms of the sale and as explained by the auctioneer prior to the beginning of any bidding and again prior to the commencement of combination bidding. The statements by the auctioneer as to combination bidding were not changes in the terms and conditions of the sale, but merely an explanation thereof. Plaintiffs were not placed on an unequal footing in preparing their bids, for they had the same information as the other bidders.

## CONCLUSIONS OF LAW

1. The property involved in this action was owned by the United States of America and its sale thereof was governed by federal law. United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); and United States v. Sommerville, 324 F.2d 712 (3rd Cir. 1963), cert. denied, 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964).

2. The terms and conditions of the auction sale were legal and proper in all respects. The government, as the owner of the property in question, had the right to prescribe the terms and conditions of the auction sale and the manner in which the property was sold. Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417 (1925); Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965); United States v. Blair, 193 F.2d 557 (10th Cir. 1952); United States v. Weisbrod, 202 F.2d 629 (7th Cir.), cert. denied, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953); Tennessee Valley Authority v. Lenoir City, 72 F.Supp. 457, 461 (E.D.Tenn.1947); and United States v. Atlanta Wrecking Co., 8 F.2d 542 (N.D.Ga.1925). As said in United States v. Weisbrod, *supra:*

> In disposing of Surplus Property the Government is not engaged in normal trade. In disposing of property, it may attach such reasonable conditions as are necessary for the general welfare. If one does not wish to bid for Government Surplus Property with the conditions attached, his alternative is to make no bid [202 F.2d at 633].

See also 7 Am.Jur.2d Auctions and Auctioneers § 18 (1963); 7 C.J.S. Auctions and Auctioneers § 7 (1937).

3. It is the auctioneer's right and duty to invite and excite the competition of bidding and to dispose of the property to the highest bidder for the highest price, and the precise methods by which this is done is vested in the discretion of the auctioneer. Blossom v. Railroad Co., 70 U.S. (3 Wall.) 196, 208, 18 L.Ed. 43 (1865); Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965); 7 C.J.S. Auctions and Auctioneers § 7 (1937); and 7 Am.Jur.2d Auctions and Auctioneers §§ 15, 32 (1963). As said in Ferry v. Udall, *supra:*

> Since the Secretary has discretionary power to refuse to sell at all, he also has the authority to set any conditions, consistent with the Act, upon which the sale may be made. Cf. Southern Pacific Co. v. Olympian Dredging Co., 260 U.S. 205, 208, 43

**744**

S.Ct. 26, 67 L.Ed. 213. If the appellants did not like the system the Secretary established for entertaining bids, their remedy was that of not bidding at all. Cf. Erie Coal & Coke Corp. v. United States 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417; United States v. Weisbrod, 7 Cir., 202 F.2d 629, 633 [336 F.2d at 709 n. 4].

■ 4. Plaintiffs participated in the auction sale with knowledge of the terms and conditions, including the explanation thereof, and they were bound thereby. Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417 (1925); Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965); United States v. Blair, 193 F.2d 557 (10th Cir. 1952); United States v. Weisbrod, 202 F.2d 629 (7th Cir.), cert. denied, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953).

■ 5. Plaintiffs' bids upon the property in question, both on an individual tract basis and on their proposed combinations, were mere offers subject to acceptance by the auctioneer, and the auctioneer never accepted the bids of the plaintiffs. Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191 (1913); Blossom v. Railroad Co., 70 U.S. (3 Wall.) 196, 206, 18 L.Ed. 43 (1865); Edelman v. Federal Housing Administration, 382 F.2d 594 (2nd Cir. 1967); Clemens v. United States, 295 F.Supp. 1339 (D.Or.1968). As said in the *Edelman* case:

> The appellant never entered into a contract with the FHA. The invitation to bid specifically reserved to the FHA the absolute right to decline to enter a contract with any bidder. Regardless of whether or not Tally's bid was valid, there was no contract of sale with appellant because the FHA never accepted appellant's bid [382 F. 2d at 597].

6. Plaintiffs were not the highest bidders upon the property in question. The property in question was sold to the highest bidders, namely, Rainbow

Springs Corporation and Deltona Corporation, within the meaning of Section 31 of the Tennessee Valley Authority Act.

Final judgment will be hereinafter entered by the Court in favor of the defendants in accordance with these findings of fact and conclusions of law.