UNITED STATES of America, Plaintiff,

v.

Jack CONRAD, Defendant.

No. 84–561–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 11, 1985.

John Lawlor, III, Jacksonville, Fla., for plaintiff.

Gordon Blalock, Jacksonville, Fla., for defendant.

## OPINION

SUSAN H. BLACK, District Judge.

*Introduction*

Plaintiff filed this action on May 21, 1984, seeking damages for breach of contract. The Complaint alleges that the defendant was the high bidder at an auction conducted by the Small Business Adminis-

tration of the assets of Mackall Printing Company and that the defendant has refused to honor his bid.

On August 2, 1984, the defendant filed an Answer which asserts the following affirmative defenses: first, that plaintiff neither owned nor had an interest in the property being auctioned; second, that defendant withdrew his offer prior to its acceptance; and third, that plaintiff misrepresented the quantity and identity of the goods being auctioned and that defendant relied upon the misrepresentation when making his bid. On August 12, 1985, defendant filed a Motion to Amend Answer which the Court granted on August 19, 1985, adding the following affirmative defenses: fourth, that plaintiff failed to comply with Section 559.27, Florida Statutes (1983), which requires that a tag reflecting the value of an item offered for auction be placed upon each item; and fifth, that the contract sued upon does not satisfy the statute of frauds, Section 672.201, Florida Statutes (1983).

This case was tried by the Court without a jury on August 19, 1985 and September 9, 1985. The Court, having considered the pretrial stipulation of the parties, the trial briefs submitted by counsel, the exhibits, the testimony at trial, and having observed the demeanor of the witnesses, makes the following findings of fact and conclusions of law.

### Findings of Fact

1. On or about November 12, 1980, Edward Mackall Gobble obtained a loan from the Small Business Administration (hereinafter "SBA"), pursuant to the Handicap Assistance Loan Program, in the amount of $82,000.00 for the purpose of opening a printing business known as Mackall Printing Service. (Testimony of Scott Dailey).

2. Mr. Gobble executed and delivered to the SBA a note in the amount of the loan and gave the SBA a purchase money security interest in the assets of the business along with a mortgage on his residence. (Testimony of Scott Dailey).

3. On or about August 19, 1983, Mr. Gobble defaulted on his note and on Octo-

ber 5, 1983, Mr. Gobble voluntarily surrendered his business assets, which were located at premises own by Jack Conrad, to the SBA. (Testimony of Scott Dailey).

4. The SBA entered into an agreement with Jack Conrad, the defendant, to rent the premises until an auction of the assets could be held. (Plaintiff's Exhibit 6).

5. Mr. Gobble always operated with the SBA as an individual when he borrowed the funds, delivered his note and surrendered his business assets to the SBA, thereby transferring ownership of the assets to the SBA. (Testimony of Edward Gobble).

6. On November 9, 1983, the SBA held a public auction of the property surrendered by Mr. Gobble at the premises leased from Mr. Conrad. (Testimony of Scott Dailey).

7. The SBA hired Louis Boyleston Realty and Auction, Inc. for the purpose of conducting the auction. Louis Boyleston is an experienced auctioneer who has conducted numerous auctions. His clients have included the bankruptcy courts and the SBA. (Testimony of Scott Dailey).

8. Louis Boyleston, of the firm, conducted the auction in two phases, first offering the property in bulk and then in piecemeal. (Testimony of Louis Boyleston).

9. An auction conducted in bulk and then in piecemeal is a common practice in the auction industry. The auctioneer first requests bids for all of the items in bulk or in a single lot. Upon the fall of the hammer in the bulk sale, the auctioneer then requests bids on each item in piecemeal or individually. If the sum of all the piecemeal bids does not exceed the highest bulk bid, the bulk bidder takes the property. (Testimony of Louis Boyleston).

10. The terms of the auction and the items included in the auction were published in brochures sent to persons as invitations to attend the auction, were listed in notices posted throughout the premises where the auction took place, were published in brochures on a table in the premises

and were announced by the auctioneer prior to beginning the auction. (Testimony of Louise Boyleston and Louis Boyleston).

11. All those who attended the auction, including Mr. Conrad, knew or should have known that certain items, including a typesetter clearly marked by a sign stating "NOT IN SALE," were not included in the auction. (Testimony of Louis Boyleston).

12. Mr. Conrad placed the highest bid of $20,000.00 in the bulk sale; the auctioneer struck down his hammer and called off the property as sold to Mr. Conrad. (Testimony of Louise Boyleston).

13. Immediately after the fall of the auctioneer's hammer, the auctioneer's clerk, Louise Boyleston, prepared and signed a memorandum of sale providing Mr. Conrad bid $20,000.00 in the bulk sale. (Testimony of Louise Boyleston, Plaintiff's Exhibit 4).

14. Several persons left the auction after the bulk sale. (Testimony of Douglas Clayton).

15. After the auctioneer had begun the piecemeal sales, Mr. Conrad approached the auctioneer and informed him that he wanted to rescind his bid. (Testimony of Louis Boyleston).

16. The auctioneer did not accept the withdrawal of the bid. (Testimony of Louis Boyleston).

17. The sum of the piecemeal sales did not exceed Mr. Conrad's bulk bid and at the end of the auction, the auctioneer announced that the winner of the bulk bid successfully purchased the property. (Testimony of Don Mullins).

18. The SBA left the property on the premises for Mr. Conrad. (Testimony of Scott Dailey).

19. Mr. Conrad has refused to pay for the property. (Testimony of Richard Young).

20. Subsequent to the auction, Mr. Conrad obtained a default judgment for back rent against Edward Gobble and levied on that judgment, resulting in a sheriff's sale of the property. (Testimony of Jack Conrad).

### Conclusions of Law

1. This Court has jurisdiction over the subject matter and the parties to the action pursuant to Title 28, U.S.C. § 1345.

2. The central issue in this case is whether the high bidder in the bulk sale of an auction conducted in bulk and then in piecemeal may withdraw his bid after the fall of the hammer on his bid, but prior to the completion of the piecemeal sales. The attorneys for both parties in briefing this issue indicated that they were unable to find case or statutory law discussing this issue. However, both parties agree that the issue is controlled by the Uniform Commercial Code and the law of contract.

The Court begins with a review of the relevant code section pertaining to auctions. Section 672.328(2), Florida Statutes (1983) provides: "A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner." Furthermore, in an auction with reserve, the auctioneer may withdraw an item from the auction until the fall of the hammer indicating the completion of the sale. Similarly, a bidder may retract his bid until the fall of the hammer. Section 672.328(3), Florida Statutes (1983). It has long been settled that a bid constitutes an offer and the fall of the hammer signifies acceptance. *See Blossom v. Milwaukee & Chicago R.R. Co.*, 70 U.S. (3 Wall.) 196, 18 L.Ed. 43 (1865); *Clemens v. United States*, 295 F.Supp. 1339, 1340 (D.Or.1968), *aff'd* 439 F.2d 705 (9th Cir.1971). Thus, the fall of the hammer creates a binding contract between the seller and the high bidder.

However, an auction conducted in bulk and then in piecemeal affects the contract because neither the bulk bidder nor the seller can perform his obligations under the contract until the piecemeal sales are complete. This is analogous to the situation described by Professor Williston: "A contract to sell goods to arrive 'will impose no liability on either party unless the goods

arrive,' but each is irrevocably bound by a contract from the outset." 5 S. Williston, *A Treatise on the Law of Contracts* § 666 (3d ed. 1961) (citation omitted). Williston classifies this as a condition precedent to the performance of the contract.

■ The usual and customary practice in the auction industry supports the conclusion that the fall of the hammer in the bulk sale creates a binding contract between the high bulk bidder and the seller. Once the hammer falls, the bidders know the sale is concluded and several bulk bidders leave the auction, as they did in this case. It is inconsistent to conclude that the customary practice of conducting auctions in bulk and then piecemeal changes the well established significance afforded the falling of the hammer. If the high bulk bidder were allowed to withdraw his bid until all the piecemeal sales were completed, persons who desired to bid only in bulk would have to remain throughout the longer piecemeal auctions before learning whether or not the sale was concluded. Furthermore, allowing the bulk bidder to withdraw his bid at any time up until the end of the piecemeal sales would similarly enable the auctioneer to refuse to accept the bulk bid, to exclude items from the auction, and to accept a higher bulk bid made after the fall of the hammer on the bulk sale but prior to completing all the piecemeal sales. Therefore, for the benefit of the bidders and auctioneer who need to know with certainty when a sale is closed, a binding contract must be formed between the bulk bidder and the seller upon the fall of the hammer in the bulk sale.

■ The requirement that the sum of all the piecemeal bids does not exceed the bulk bid for the bulk bidder to take the property constitutes a condition precedent to performance of the contract.[1] In the present case, this condition was fulfilled when the piecemeal bids did not exceed the defendant's bulk bid. The SBA has satisfied its obligations under the contract by leaving the property on the defendant's premises for him to take possession.

■ In conclusion, the parties entered into a binding contract upon the fall of the auctioneer's hammer. The condition precedent to performance, the failure of the piecemeal bids to exceed the bulk bid, was satisfied. Thus, the defendant is obligated to perform, namely to pay the amount of his bid.

■ 3. The Court will address briefly two additional issues. The first is whether Section 559.27, Florida Statutes (1983),

---

1. Conditions placed upon contracts derived from auction sales are not uncommon. The seller has the right to prescribe the method for conducting the auction as well as any conditions upon the awarding of property. *Jones v. Tennessee Valley Authority,* 334 F.Supp. 739 (M.D.Fla.1971) (auctioneer first requested bids on tracts individually then in proposed combinations and finally for all tracts together). Courts have held that bidders are bound by conditions and terms of sale as announced by the auctioneer. *See United States v. Weisbrod,* 202 F.2d 629 (7th Cir.1953), *cert. denied,* 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953) (condition in auction that government could withdraw from sale any property prior to its physical delivery did not render contract void for lack of mutuality of obligation and the government's acceptance of the bid contractually bound the bidder.); *United States v. Blair,* 193 F.2d 557 (10th Cir.1952) (bidder was bound by announced condition that if bid was not the highest one, the government could rescind the contract, revoke the property and award the property to the highest bidder.); *In re Wilson Freight*

*Co.,* 30 B.R. 971 (Bankr.S.D.N.Y.1983) (bidder at auction sale of tractors was bound by minimum price condition where the condition and terms of sale were announced by the auctioneer.).

At least one court has expressly recognized a contract subject to a condition precedent to performance in the auction context. In *In re Community Investments Associates I,* 14 B.R. 211 (Bankr.E.D.Va.1981), the court held that a bidder was not entitled to property. Even though his bid was the high bid and was accepted by the fall of the auctioneer's hammer, this created only an executory contract subject to the condition that the high bidder obtain title insurance. The bidder never obtained the insurance, thereby causing the contract to fail.

In the present case, the bidder is similarly bound by the terms and conditions announced by the auctioneer. The requirement that the piecemeal bids could not exceed the bulk bid for the bulk bidder to take the property results in a contract subject to a condition. If the piecemeal sales exceeded the bulk bid, the contract between the SBA and the defendant would fail.

which requires the tagging of items offered at auction, provides a meritorious defense. The statute provides, in pertinent part:

> (2) The provisions of this section shall not apply: (b) When a value is not expressed by the auctioneer as a guide to the bidder ....

Section 559.27(2)(b), Florida Statutes (1983). In the present case, the auctioneer never expressed an opinion as to the value of any of the items being auctioned. Thus, the provisions of the statute do not apply and there was no need to tag the items.

The second issue is whether the contract sued upon satisfies the statute of frauds, which provides, in pertinent part:

> (1) [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Section 672.201(1), Florida Statutes (1983).

In the present case, upon the fall of the hammer, the auctioneer's clerk prepared a memorandum of sale which provided that Mr. Conrad bid $20,000 in the bulk sale. Upon the acceptance of a bid, the auctioneer or the auctioneer's clerk becomes the agent of the purchaser as well as of the seller for the purpose of drawing up and signing a memorandum of sale in compliance with the statute of frauds. *See In re Community Investments Associates I,* 14 B.R. 211 (Bankr.E.D.Va.1981); *Romani v. Harris,* 255 Md. 389, 258 A.2d 187 (1969); *see also* Restatement (Second) of Contracts, § 135 comment b (1979). Therefore, the writing prepared by the auctioneer's clerk satisfies the requirements of the statute of frauds.

4. For the reasons stated in this Opinion, the Clerk of the Court is directed to enter judgment for the plaintiff against the defendant in the amount of $20,000.00.