Hawkins J.,
delivered the opinion of the Court.
It appears from this, record that, in 1860, Eakin & Co. obtained a decree in the Chancery Court at Savannah against Herbert et al., upon an indebtedness of the defendant to the complainants. The decree directed, that in case the defendants failed to pay into Court one-third part of said indebtedness, by the 1st of January, 1861; one-third by the 1st of January, 1862; and the remaining third by the 1st of January, 1868; in default of any of said payments, the Clerk & Master of said Court should sell, in proportion to the amount due, a tract of land belonging to the defendants, upon which was situated some cotton mills. The defendants failed to make the first payment as required, and in default, the Clerk & Master proceeded to sell one- *118 third of said land and mills, when the complainants became the purchasers, at the price of four thousand - hundred dollars. This sale was reported to the Court, and was confirmed.
The defendants having also failed to make said second payment, as required by said decree, the Master proceeded, in 1862, to sell a second interest of one-third part of said land and mills, when the same was struck off to complainants, at the price of four thousand-hundred dollars. The second sale was reported to Court; but, before the same had been confirmed, complainants, at the -, Term of said Court, presented their petition in Court, by which, in addition to the facts before stated, they allege that, at the time of said last mentioned sale said mills were in successful operation, and believed to be worth the amount bid; but since that time, and in 1868, during the war, said mills, by order of some officer commanding a squad of soldiers, were destroyed by fire, at which time Yolentine, one of the defendants, for himself and the other defendants, was in possession of the same.
The petitioners aver that they have never been in possession of any portion of said property, and that the defendants have had the use and possession of the same until it was burned. They ask to be permitted to 'withdraw their said bid, and to be discharged from said purchase, because of the destruction of the property by fire.
Upon presentation of this petition in Court, leave was given to file the same, and thereupon a decree was pronounced, directing the Master to take proof and report to a subsequent term of the Court upon the facts al *119 leged in the petition. In obedience to this decree, the Master proceeded to take proof, and reported substantially, as follows: At the time the mills were burned the property was worth $16,000; after the burning, it was only worth about $2,000. Yolentine, who was the active partner of the defendants, had had the possession and management of the property up to the time it was destroyed by fire.
Upon the hearing of the cause, upon the petition and report of the Master, the Chancellor, being of the opinion that the purchasers were not entitled to be discharged from their said second purchase, dismissed the petition, and pronounced a decree confirming said sale; to reverse which, the purchasers have appealed to this Court.
We think the decree of the Chancellor is erroneous.
The principle that a sale of real estate is not complete or binding on the purchase'’, until confirmation of the report, has been frequently sanctioned and applied by this Court.
The course of decision upon this question in our Courts, has conformed rather to the English practice than to that of some of the American Courts ; and it may now be regarded as well settled, that, according to the practice adopted by our Courts, the rule in Chancery sales is, that the purchaser of real estste is not considered as entitled to the benefit of his purchase until the Master’s report cf the purchaser’s bidding has been absolutely confirmed by the Court; and this rule applies equally to cases in which it is sought to compel *120 a purchaser to complete his purchase, as when the latter seeks to enforce the contract.
Until confirmation of the report of the sale, the purchaser is not liable to any loss or injury which may happen to the estate in the interim, by fire or otherwise ; nor can he he compelled to complete his purchase. Neither is he entitled to a conveyance, or to he let into the, jjossession of the estate; and until the confirmation of the report, the purchaser may he discharged from his purchase, on the ground that a good title cannot he made, or of mistake, or other sufficient cause. “But after confirmation of the sale, the purchaser has become the owner of the estate — is subject to any loss or injury it may sustain; and is hound to execute the terms of the contract:” 2 Danl. Ch. Pr., 1452, 1454, 1455, 1463: Childress vs. Hurt, 2 Swan, 487: Houston vs. Aycock, 5 Sneed, 406, and authorities cited.
The only question in this case is: Does there exist sufficient cause for setting aside the sale and discharging the purchasers? At the time the property was destroyed by fire, the sale was incomplete. The bidder had only offered to become the purchaser, and the sale remained incomplete until his bid was accepted, by the confirma-, tion of the report of the sale. The possession, use and enjoyment of the property, remained in the defendants. The purchaser never had the possession, or use of the same, in fact; nor was he entitled to a convey, anee, or to be let into the possession of the estate at the time it was destroyed. At the time the hid was made the estate was worth $16,000; it is now worth only *121 about $2,000. Under the circumstances of this case, we think it would be iniquitous to compel the purchasers to complete the purchase, and that they are entitled to be discharged.
The decree of the Chancellor will be reversed; the second sale will be set aside, and the purchasers discharged, and the cause remanded.