# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 5, 2010Session

## RICHARD L. HOLLOW, TRUSTEE, et al., v. MICHAEL L. INGRAM, et al.

### Appeal from the Chancery Court for Knox County
### No. 168330-2     Hon. Daryl R. Fansler, Chancellor

### No. E2010-00683-COA-R3-CV - FILED NOVEMBER 29, 2010

The parties, owners of a tract of land, ultimately agreed to the sale of the property by a Special Master appointed by the Court. The sale was held and the Master ultimately reported the purchase and asked that the sale be confirmed. Before the Court acted on the Master's Report, the plaintiff moved for a dismissal pursuant to Tenn. R. Civ. P. Rule 41, which the Trial Court granted and dismissed the case. On appeal, we hold that the Trial Court was required to act on the Master's Report before entertaining any motion to dismiss the case, and reinstate the action and remand for further proceedings.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

David E. Fielder, P. Edward Pratt and Melissa Loney Stevens, Knoxville, Tennessee, for appellants Bryan E. Testerman and William Ted Phillips, Jr., and Lewis S. Howard, Jr., Knoxville, Tennessee, for the appellant, Scott W. Davis.

Joseph J. Levitt, Jr., and Jason T. Murphy, Knoxville, Tennessee, for the appellee, Patrick J. Schaad, Trustee, and E. Jerome Melson, Knoxville, Tennessee, for the appellees, Richard L. Hollow, Trustee, Kent W. Ingram, David L. Ingram, and Albert J. Ingram.

**OPINION**

Plaintiffs, Richard Hollow, Trustee, Kent Ingram, David Ingram, and Albert Ingram, filed a Complaint for Declaratory Judgment and/or to Establish a Trust, asserting that the grandfather of the Ingram siblings left a will which established a trust for his four grandsons for which Hollow was the trustee, and that the trust had terminated. Named as defendants were Michael and his wife Rebecca, as well as Patrick Schaad, Trustee. The Complaint alleges that the only asset of the trust remaining is a large tract of land in West Knox County which was the family farm. The Complaint states that the parties had agreed prior to the filing of the Complaint that the tract needed to be sold and the proceeds divided, and Hollow began trying to sell it for the highest and best price by soliciting proposals from land developers who would also allow the brothers to retain a small amount of property to build on, as was their wish.

Further, the Complaint states that, with the assent of the brothers, Hollow entered into a complex real estate contract with Schaad for the development of the property, which set a good price for the land and allowed the brothers to retain a portion. The Complaint states that Schaad paid $200,000.00 in earnest money, and then began spending money to create a development plan for the property, but that Michael refused to go through with the closing at the last minute.

The Complaint asks the Court to find that Michael had acquiesced in the creation of an oral trust at the time the testamentary trust ended, and that the contract between Hollow, as trustee, and Schaad, was valid and enforceable.

Michael and Rebecca Ingram Answered and CounterClaimed, asserting the trust had terminated and denying the creation of an oral trust. They also, in their Counter-Complaint, asserted that Hollow had breached his fiduciary duty.

Schaad also Answered, asserting that he had paid $200,000.00 in earnest money, plus another $50,000.00, which the four brothers received, and averred that he had spent $1 million on development of the property plus another $200,000.00 to buy adjacent property. Schaad also filed a Cross Claim, asserting that he had relied on Michael's statements/actions and acceptance of cash benefits to his detriment.

The parties were ordered to attend mediation, and the mediator filed a report stating that the issues had been settled.

Plaintiffs then filed a Motion seeking to enforce the mediation agreement or, in the alternative, to have the land partitioned. Michael and Rebecca filed a Motion in Opposition,

-2-

stating that they had agreed to certain things and agreed to work out other issues later, but never made a final settlement. Plaintiffs then filed an Amended Complaint asking the Court to order the farm sold and divide the proceeds.

The Court then entered an Order Directing Sale at Public Auction, stating that based on the pleadings filed by the plaintiffs and Schaad, and the statements of Michael and Rebecca made in open court that they agreed to a public sale, the Court ordered the farm to be sold at auction as a single tract, and that the Clerk should investigate and report on what would be the best way to sell and get the most money. The Order was signed as approved for entry by all parties.

The Clerk and Master then filed a Report, suggesting that Slyman Auction be allowed to auction the property, and that the parties were in agreement with this. The original plaintiffs and Schaad filed a motion seeking to be allowed to credit bid at the auction.

The Court entered an Agreed Order following a further hearing on March 23, 2009, finding that all parties stipulated that James Slyman of Slyman Auction should be appointed Special Master to sell the farm. The Court set an advertising budget and fee for Slyman, and once again ordered that the farm would be sold as a single tract on April 25, 2009, to the highest and best bidder. The Court ordered that the high bidder would pay $100,000.00 down on the day of the auction, would pay $500,000.00 within three days, and would execute a note for the remainder of the purchase price. The Court ordered that upon receipt of these funds, the Special Master would report to the Court and request that the sale be confirmed.

The next pleading is a Petition and Offer to Raise Bid filed by the original plaintiffs. This document states that the high bidders at auction were Bryan Testerman, William (Teddy) Phillips, Jr., and Scott Davis, whose bid was $26,500,000.00. The plaintiffs offered to pay $29,150,000.00 for the property, and attached a check to the Special Master for a ten percent down payment.

The Special Master filed his Report of Sale, and stated that he sold the property at auction to Testerman, Phillips, and David for $26,500,000.00, and that they paid the requisite $600,000.00 down and executed a promissory note. The Master stated that after the sale, he received a copy of the Petition and Offer to Raise Bid and cashier's check from plaintiffs, and thus recommended that the bidding be reopened.

Testerman and Phillips filed a Motion to Intervene, stating that they, along with Davis, were the high bidders at the auction, and that the auction was advertised as absolute. They stated that nothing in the advertisements stated that bids would be allowed after the sale, and there were no announcements at the auction stating such either. Davis filed a similar Motion

to Intervene. Plaintiffs, Michael and Rebecca, and Schaad (the original parties to the litigation) filed a Joint Motion to Dismiss Cause with Prejudice, stating that they had settled their issues. Davis filed Objections and Exceptions to the Special Master's Report of Sale, stating that the bids should not be reopened and the sale should be confirmed. Phillips and Testerman filed a Motion to Join Beacon Park, LLC, as a necessary party, stating that the Ingrams had all conveyed their interests in the land to Beacon Park. The Court allowed Phillips, Testerman, and Davis to intervene, and allowed limited discovery. Phillips and Testerman then filed a Motion asking the Court to confirm their high auction bid.

The Court then held a hearing, and the attorneys argued their various positions. The Court ruled that the Special Master was previously ordered to simply file a report after the sale asking that it be confirmed, and that he should do so immediately and then the parties would be allowed to object or take exceptions. The Court entered an Order stating that the Special Master did not ask for the high bid to be confirmed as the Court had previously ordered, and that the Special Master exceeded his authority and ordered him to file his Report of Sale consistent with the Court's prior order.

The Special Master then filed another Report of Sale, stating that the high bid was for $26,500,000.00, and that the down payment had been made and the note executed. The Master thus asked the Court to confirm the sale. Michael, Rebecca, and Schaad filed Objections and Exceptions to the report, stating that all original litigants had agreed to dismiss the action, and further that a higher bid of $29,150,000.00 had been made, and they asked that an evidentiary hearing be held. Intervenors objected to the Request for Evidentiary Hearing, stating that an evidentiary hearing was unnecessary, as the record was voluminous, and any further evidence would likely be redundant. Intervenors stated that the matter of confirmation could be decided on a "basic hearing citing to the record without further expansion."

The Court then issued a Memorandum Opinion and found that the high bidder at a judicial sale subject to court confirmation was an offeror, and that the offer was to no avail until the sale was confirmed. The Court stated that the high bidder subjected himself to the jurisdiction of the Court and became a quasi-party to the proceedings. The Court thus found that high bidders herein became quasi-parties entitled to seek intervention as parties, and that they had the right to insist that the Special Master follow the terms of the order and request that their high bid be confirmed. The Court found that the high bidders had not, however, acquired an interest in the property itself.

The Court found that Rule 41 allowed the parties to take a voluntary dismissal, and that there were no cases where the parties to a partition action sought to take a voluntary dismissal after the sale but before confirmation. The Court held that plaintiffs had an

unfettered right to dismiss subject to limited exceptions, and that one such exception was if the defendant had a vested right that would be impaired by the dismissal. The Court found that intervenors had the right to have the Master ask the Court to confirm the sale, and had the right to object/take exceptions to the Master's report. The Court found the intervenors had no other vested rights, and that these rights had been upheld. The Court then granted the motion to dismiss, and found that the issue of whether to allow the advanced bid was moot.

Intervenors have appealed and raise these issues:

1.    Whether the Trial Court erred in dismissing the lawsuit pursuant to Tenn. R. Civ. P. 41 before holding a hearing or ruling on the Special Master's report of sale?

2.    Whether intervenors waived their right, if any, to such a hearing?

The Trial Court found that the original parties to the action were entitled to take a voluntary non-suit because the intervenors' only right was to have the Special Master ask the Court to confirm the sale by filing a Report of Sale, and to object and take exceptions to the Report. The Court found that once the Special Master properly filed his Report asking that the sale be confirmed, and the intervenors were allowed to object and take exceptions to same, this effectively satisfied the vested rights of the intervenors and the Court could then grant the original litigants' motion to dismiss.

The Court correctly ruled that the plaintiffs' right to dismiss the action is fairly absolute and continues up until the time the matter has been finally submitted to the court for determination on the merits. *Lacy v. Cox*, 152 S.W.3d 480 (Tenn. 2004). There are exceptions to this rule, however, one of which is that a plaintiff cannot take a nonsuit if it would deprive a defendant of a vested right. *Id.* While the intervenors herein were technically not defendants, the parties agree and the case law supports that the same rule would apply to any party litigant. Thus, the question is whether the granting of a nonsuit in this case deprived the intervenors of a vested right?

The intervenors did not, by virtue of being the high bidder at the judicial auction, acquire a vested right in the property itself. The case law is clear that a high bidder at a judicial sale is merely an offeror, and until the sale is confirmed by the court, the high bidder has no actual rights in the land. *Reese v. Copeland*, 74 Tenn. 190 (1880). As such, until the sale is confirmed by the court, neither party can be compelled to complete the purchase. *Eakin & Co v. Herbert*, 44 Tenn. 116 (1867)(mills sold by master at sale but burned down before bid confirmed - high bidder allowed to withdraw bid, not required to complete purchase). This is in accord with the U.S. Supreme Court's ruling in *Blossom v. Milwaukee & Co., Railroad Co.*, 68 U.S. 655 (1863) and *Blossom v. Milwaukee & Co., Railroad Co.*,

70 U.S. 196 (1865), wherein the Court also held that a judicial sale was not final until confirmed by the court.

The U.S. Supreme Court, however, went on to hold, that being the high bidder at a judicial sale made the bidder a quasi-party to the proceedings, such that the bidder was subject to the jurisdiction of the court, and was thus entitled to a hearing on whether the sale should be confirmed. *Id.* 655. The Court stated, "[a] purchaser or bidder at a master's sale in chancery subjects himself quo ad hoc to the jurisdiction of the court, and can be compelled to perform his agreement specifically. It would seem that he must acquire a corresponding right to appear and claim, at the hands of the court, such relief as the rules of equity proceedings entitle him to. In *Delaplaine v. Lawrence*, [10 Paige Ch. 602, N.Y.] Chancellor Walworth says, that 'in sales made by masters under decrees and orders of this court, the purchasers who have bid off the property and paid their deposits in good faith, are considered as having inchoate rights which entitle them to a hearing upon the question whether the sales shall be set aside. And if the court errs by setting aside the sale improperly, they have the right to carry the question by appeal to a higher tribunal.'" *Id.* at 656.

In Tennessee, a high bidder at a judicial sale is considered a quasi-party to the proceedings and is subject to the jurisdiction and powers of the court, and is entitled to notice of all proceedings thereafter which affect the purchase and title, and is subject to all actions of the court subsequently taken in the cause. *Matthews v. Eslinger*, 292 S.W.2d 543 (Tenn. Ct. App. 1955); *Allen v. East*, 63 Tenn. 308 (1874). The high bid may subsequently be rejected by the court if the court refuses to confirm the sale, but if the court confirms the sale the high bidder may be forced to go through with the sale at that point. *Id.* Thus, the high bidder becomes a part of the subsequent proceedings which affect the purchase, and, as the Trial Court herein found, he would have the right to seek intervention and participate in the proceedings below.

What the Trial Court failed to recognize, however, is that once the Special Master filed his report regarding this sale, the Court was required to act upon the same, and should have held a hearing specifically regarding whether the report should be confirmed and then made his independent decision on that issue. In Tennessee, Tenn. R. Civ. P. 53.04(2) discusses Special Master reports in non-jury actions, and states that "the court **shall act** upon the report of the master. Within ten (10) days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. . . . The court **after hearing** may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions" (emphasis added). As we have recognized:

> Tenn. R. Civ. P. 53.04(2) mandates action by the trial court. It provides that in a non-jury action the trial court 'shall act upon the report of the master.' This rule requires

the judgment of the trial court. The court cannot abdicate to the master its responsibility to *make a decision* on the issue in question. It must do more than "rubber stamp" what the master has done. Should it decide to confirm the master's report, it must be satisfied, after exercising its independent judgment, that the master is correct in the decision he has made.

*Lakes Property Owners Ass'n, Inc. v. Tollison*, 1994 WL 534480 (Tenn. Ct. App. Oct. 4, 1994).

This Court went on to explain that the court must hold a hearing on the report of the Special Master, even if no one files objections to it. *Id.* We stated that "the trial court is required to act - to exercise its authority as a court of original jurisdiction to resolve the issue at hand. It doesn't have to hear evidence, but it can. The judgment is to be that of the trial court, not the master." *Id.*

In the case of *Pruett v. Pruett*, 2008 WL 182236 (Tenn. Ct. App. Jan. 22, 2008), this Court again stated that "[t]he plain language of Tenn. R. Civ. P. 53.04(2) states that once the report of the Special Master is filed, the trial court is required, after a hearing, to take some affirmative action and 'act upon the report of the master'." Whether a party can voluntarily dismiss its lawsuit after the Special Master's report has been filed but not yet acted upon by the court, is answered by Rule 53.04. A plain reading of that rule and the cases interpreting it hold that the court must act upon the Master's report before any further action can be taken. Indeed, the rule clearly mandates that the trial court hold a hearing and exercise its independent judgment regarding whether the master's recommendations should be confirmed.

Appellees argue that intervenors did not raise this issue regarding the necessity of a hearing at the trial level, or that they waived it in their Objections to Request for Evidentiary Hearing. First, Rule 53.04 and the cases cited make clear that a hearing is required, whether or not any one files objections or otherwise acts. It is mandatory, and intervenors did not have to request it. Moreover, intervenors did object to holding an evidentiary hearing that would be redundant to the information already received by the Court, stating that "the record before the Court is vast and confirmation can be decided on a basic hearing citing to the record without further expansion." Accordingly, intervenors did not waive their right to a hearing, they merely objected to taking redundant evidence, but the Court did not hold any such hearing. More importantly, the Court never decided whether the Special Master's report of sale should be confirmed, and never exercised its independent judgment on this issue, deciding instead to uphold the dismissal, pursuant to Tenn. R. Civ. P. Rule 41.

In conclusion, we hold that pursuant to Rule 53.04, *Lake Owners* and *Pruett*, the Trial Court was required to hold a hearing on the Special Master's report and act on it, making a

decision on the merits of the report. The Court can take evidence or not, in its discretion, but it must resolve the issue regarding whether the sale is to be confirmed pursuant to applicable law before any other action is taken by the Court.

The case is reinstated and remanded to the Trial Court for further proceedings in accordance with this Opinion. The cost of the appeal is assessed to plaintiffs, Patrick J. Schaad, Trustee, Richard L. Hollow, Trustee, Kent, W. Ingram, David L. Ingram, and Albert J. Ingram.

_____
HERSCHEL PICKENS FRANKS, P.J.